# COMPOSITE EXHIBIT "B"



IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION

CASE NO. 10 - 2 4 7 4 6 CA 08

PEDRO SANTIAGO,

      PLAINTIFF,

vs.

**CIVIL ACTION SUMMONS**

CITY OF HIALEAH, a Political Subdivision of the State of Florida,

      Defendant.

_____/

*S-S-10 12:48pm*

*CPS# 1694*

**THE STATE OF FLORIDA:**
**To Each Sheriff of Said State:**

      **YOU ARE HEREBY COMMANDED** to serve this Summons, Complaint along with Plaintiff's First Request for Production, First Set of Interrogatories, and Notice of Deposition by serving:

> **Mayor Julio Robaina**
> **City of Hialeah City Hall**
> **501 Palm Avenue, #A**
> **Hialeah, Florida 33010**

Each defendant is required to serve written defenses to the complaint or petition on Plaintiff's attorney, to wit:

whose address is:

> **GONZALO R. DORTA, P.A.**
> **334 Minorca Avenue**
> **Coral Gables, Florida 33134**

Within thirty (30) days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney to immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

**DATED** this APR 2 6 2010 day of _____, 2010.

             By: _____ ~~T RON BETHEL~~

                  as Deputy Clerk

**RECEIVED**
MAY 0 5 2010
**MAYOR'S OFFICE**

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI- DADE COUNTY, FLORIDA

GENERAL JURISDICTION

CASE NO.0 - 2 4 7 4 6 CA 08

PEDRO SANTIAGO,

    PLAINTIFF,

vs.

**COMPLAINT FOR DAMAGES**

CITY OF HIALEAH, a Political
Subdivision of the State of Florida,

    Defendant.

_____/

    PLAINTIFF, PEDRO SANTIAGO, by and through his undersigned counsel, hereby sues the CITY OF HIALEAH a Political Subdivision of the State of Florida and alleges as follows:

### GENERAL ALLEGATION

    1.    This is an action for bodily injuries, which arose from the excessive and unreasonable use of force by police officers of the CITY OF HIALEAH.

    2.    Plaintiff seeks damages in excess of $15,000.00, exclusive of interest and costs.

    3.    Venue is proper in Miami-Dade County, Florida because the cause action accrued in the Hialeah, Florida and the incident in question similarly occurred in Hialeah, Florida.

    4.    All conditions precedent to the filing of this claim have been satisfied in accordance with the presuit statutory requirements of this State by the PLAINTIFF having served and the CITY OF HIALEAH having received the requisite presuit notice, which was also served on all appropriate agencies and/or entities as reflected in composite Exhibit "A."

## IDENTIFICATION OF PARTIES

5.      PEDRO SANTIAGO, ("PLAINTIFF") is *sui juris* and a resident of Miami-Dade County, Florida.

6.      The CITY OF HIALEAH (the, "CITY") is an incorporated City and Political Subdivision of the State of Florida, carrying on its business in Hialeah, Florida, and employed the hereinafter identified police officers who used excessive and unreasonable force on the PLAINTIFF giving rise to the cause of action herein.

## FACTS GIVING RISE TO CAUSE OF ACTION

7.      The PLAINTIFF re-alleges hereunder paragraphs 1-6 and further alleges the following facts giving rise to this suit.

8.      On or about September 28, 2007, at approximately 4:30 p.m., the PLAINTIFF, after finishing work for the day, was walking to a bus stop located at approximately at 2899 West Second Avenue, in the city of Hialeah, Florida.  As we walked to the bus stop, PLAINTIFF had an involuntary epileptic seizure causing him to go into convulsion and lose control over his bodily movements, as he uncontrollably shaking and jerking and flinging his arms and legs. Plaintiff fell to the ground while in seizure.

9.      CITY police officers ("Officers") were dispatched to the scene.

10.     When the Officers arrived at the scene, they encountered the PLAINTIFF who was still seizing, having convulsions and uncontrollably shaking, jerking, and moving his arms and legs while he remained on the ground.

11.     Upon information and believe, at least three of the Officers from the CITY, approached the PLAINTIFF as he was in an epileptic seizure on the ground and began to command PLAINTIFF to get on his feet. PLAINTIFF was unresponsive to these commands and

2

continued to behave erratically, exhibiting uncontrollable and involuntary body movements that the Officers treated as resisting and a refusal to adhere to their commands.

12. Whereupon, the Officers began repeatedly to taser the PLAINTIFF and strike his body, as the PLAINTIFF remained on the ground in a defensive posture, unable to protect himself or respond to the Officers' commands.

13. The PLAINTIFF was tasered over fifteen (15) times by the Officers and manhandled in an attempt to forcefully make the PLAINTIFF get off the ground.

14. The multiple and repeated use of the taser on PLAINTIFF's body, sent multiple painful and dangerous volts of electricity through his body, placing the PLAINTIFF in serious risk of injury or death and further aggravating his condition as he remained in an epileptic seizure.

15. One of the Officers handcuffed the PLAINTIFF, while others kicked and hit the PLAINTIFF in an attempt to subdue him.

16. The multiple and repeated infliction of the taser gun on the PLAINTIFF eventually took effect and the Officers were able to take complete control of the PLAINTIFF, throw him into the police car and transport him to jail.

17. The Officers charged the PLAINTIFF with battery, resisting arrest with violence, and exhibiting criminal disorderly conduct when, in fact, the PLAINTIFF's uncontrollable body movements and actions were as a result of an epileptic seizure.

18. The multiple times that the PLAINTIFF was improperly tasered, along with the blows he took to his body, caused the PLAINTIFF to suffer serious and significant bodily injuries.

3

19.     Each of the Officers of the CITY that responded to this subject incident and inflicted the body injuries on the PLAINTIFF were employees of the CITY and engaged in the course and scope of their employment.

20.     Each of these Officers, all employees of the CITY, grossly, recklessly, and unreasonably failed to recognize the obvious signs of a seizure and instead took PLAINTIFF's uncontrollable and involuntary jerking as signs of resisting arrest, even though at all material time the PLAINTIFF laid defensively on the ground in need of immediate medical attention.

21.     Instead of helping the PLAINTIFF, multiple Officers used excessive force by tasing the PLAINTIFF, hitting and wrestling with the PLAINTIFF in an attempt to arrest the PLAINTIFF because he was unresponsive to their commands, even though it was or should have been obvious that the PLAINTIFF's outward manifestations clearly signaled that the PLAINTIFF was having an involuntary seizure.

## COUNT I

## NEGLIGENT TRAINING

22.     The PLAINTIFF re-alleges all the above paragraphs and further alleges the following in support of this count for negligent training by the CITY of its Officers.

23.     The CITY had a duty to train the Officers on how to respond to an individual suffering in public from a seizure.

24.     The CITY had a duty to train the Officers in the proper use of taser guns.

25.     The CITY breached its duty to train the Officers by failing to give sufficient instruction on how to identify whether an individual is involuntarily seizing as a result of a medical condition; failing to train the Officers to determine first whether an individual is *voluntarily* resisting arrest before using the force of a taser gun to subdue that individual; failing

4

to train its police officers on how to investigate a complaint of disturbance prior to using force to subdue that individual reportedly causing the disturbance; failing to train the officers on the proper and reasonable conduct when coming upon a person involuntarily seizing or convulsing; and failing to train the officers when to properly use taser guns when a suspect is not posing a threat to the public and lays on the ground not engaged in a serious crime..

26.     But for the training failures of the CITY, the police officers would not have injured PLAINTIFF.  As a direct and proximate cause of the CITY's negligence, PLAINTIFF was injured.

27.     PLAINTIFF's injury and damages were caused by the negligence of the CITY in failing to train the Officers.

**WHEREFORE,** the PLAINTIFF demands judgment for damages plus cost.

## COUNT II

## VICARIOUS LIABILITY

28.     The PLAINTIFF re-alleges paragraphs 1-20 and further alleges the following in support of this count for vicarious liability against the CITY for the acts and conduct of its Officers.

29.     The CITY is vicariously responsible and liable for the Officers' negligence.

30.     At all times relevant, the Officers had a duty to use the taser gun carefully, reasonably, and in a manner that did not expose members of the public, like PLAINTIFF, to bodily injury.

31.     The Officers chose negligently to taser PLAINTIFF to get PLAINTIFF to respond to their commands, which were unreasonable given the physical limitation and medical condition of the PLAINTIFF that was clearly apparent or that the Officers would have recognized had they

5

used reasonable care. The Officers' use of their taser guns in this instance was reckless, unreasonable, unwarranted, and excessive and subjected the PLAINTIFF to serious injury.

32.     But for the Officers' negligence, PLAINTIFF would not have been injured and as a direct and proximate cause of the Officers' negligence, PLAINTIFF was injured.

33.     At all times relevant, the CITY of Hialeah was the employer of the Officers, who used excessive and unreasonable fore while in the course and scope of their employment with the CITY.

34.     The CITY of Hialeah is vicariously liable for the Officers' excessive use of force and wrongful tasering because at all times relevant, the Officers were in the course and scope of their employment and in the discharge of their duties for the benefit of their employer, the CITY.

35.     PLAINTIFF's damage and injury was caused by the negligence of the Officers, for which the CITY is vicariously liable.

**WHEREFORE,** the PLAINTIFF demands judgment for damages plus cost.

## DEMAND FOR JURY TRIAL

The PLAINTIFF demands trial by jury on all counts as a matter of right.

Dated this 23rd day of April, 2010.

Respectfully submitted,

GONZALO R. DORTA, P.A.
334 Minorca Avenue
Coral Gables, Florida 33134
Telephone: 305-441-2299
Telecopier: 305-441-8849

By: _____

_GONZALO R. DORTA_
Florida Bar No. 650269

6

# GONZALO R. DORTA, P.A.

ATTORNEYS AT LAW
334 MINORCA AVENUE
CORAL GABLES, FLORIDA 33134

TELEPHONE (305) 441-2299
TELEFAX (305) 441-8849
E-MAIL: GRD@DORTALAW.COM

FILE COPY

June 16, 2009

**VIA CERTIFIED RETURN
RECEIPT REQUESTED**

Florida Department of Financial Services
200 E. Gaines Street
Tallahassee, Florida 32399-0322

Chief of Police, Mark Overton
5555 East 8th Avenue
Hialeah, Florida 33013

Mayor Julio Robaina
City of Hialeah City Hall
501 Palm Avenue, #A
Hialeah, Florida 33010

## *PRESUIT NOTICE OF CLAIM PURSUANT TO § 768.28 (6), FLA. STAT.*

Re:  Our Clients/Claimant:      **Pedro Santiago Santana**
      Date of Birth:
      Social Security No.:
      Date of Incident:        **September 28, 2007**
      Hialeah Police Rpt No.:
      State Case:

Dear Gentlemen:

Please be advised that this firm represents Pedro Santiago Santana arising from the wrongful arrest and use of excessive force on our client on September 28, 2007, by several police officers: Officers – Gutierrez, Badge #1202, Jordan, Badge#1598 and Fritz, Badge #1620 from the Hialeah Police Department.

On or about September 28, 2007, the prospective defendant officers without any legal or just cause brutally assaulted and deployed a taser gun several times on Mr. Santana in their attempt to subdue him. The incident in question occurred when Mr. Santana who suffers from neurological dysfunction, was experiencing an epileptic seizure had collapsed to the ground was unable to respond to the officers commands. When the police officers arrived on the scene, Mr. Santiago was still having an epileptic seizure. The officers attempted to subdue him by lifting him up from the ground by use of excessive force to hold him and unnecessarily deploying their taser X26 stun weapon to control him down.

Notice of Claim
May 8, 2009
Page 2
_____/

This excessive use of force is actionable under Section 1983 of the Federal Civil Rights Statute, common law and the City is also vicariously liable for its officers' negligence and excessive use of force on my client.

## THEORIES OF RECOVERY

The police officers were acting under their scope of employment with the City of Hialeah ("City") when the incident occurred. These officers did not receive any training or if they did, the training was inadequate to educate the officers on how to properly and safely address a suspect in epileptic seizure while responding to a simple traffic obstruction complaint.

My client was experiencing an epileptic attack when the officers sought to control him. One in an epileptic seizure cannot control his body movements. Thus, my client was unable to control the involuntary movements of his arms. The officers mistakenly attributed this behavior to one resisting arrest with violence. When in his epileptic sequence, my client also experienced visual and cognitive distortion of perception and began to hallucinate. This behavior is classic symptoms of an epileptic seizure, not a volitional act of resisting arrest. My client had been under treatment for his epileptic condition since October 2004.

When my client went into his epileptic attack he became combative and non-responsive to the officers' commands. Undisputedly, he was in an epileptic episode and the officers should have recognized this condition. Furthermore, had the officers been properly trained or trained at all on this situation, the obvious signs of his medical condition were apparent and needed to be handled accordingly.

The City's officers mistakenly viewed my client's involuntary body movements and combative response as a civilian resisting arrest. In response, the City's officers tassered him several times and man-handled him. More than one officer subdued my client and did so by using excessive force when it was unnecessary to do so.

Consequently, my client was arrested and hospitalized for a period at Jackson Memorial Ward, where he was treated for multiple contusions, to his body including multiple taser puncher wounds to front, side and back of his upper torso as well as a right hand sprain with hairline fracture to his right hand thumb. These injuries arise not from the use of reasonable force.

The City's Police Department does not provide its officers the necessary training to familiarize its patrol officers with the manifestation of physical or neurological induced involuntary body movement attributable to a medical condition like the circumstances that the responding officers encountered the day in question. These are situations that are clearly foreseeable matters that an officer will expect to encounter in his work.

Notice of Claim
May 8, 2009
Page 3
_____/

My client was supposedly obstructing traffic. Clearly not a severe crime. Mr. Santiago did not pose an immediate threat to the safety of the officers or others. In fact, Mr. Santiago was the only <u>person</u> in <u>need</u> of <u>help</u>. The force used to subdue my client was excessive and unreasonable.

## CITY'S LIABILITY

The City has the duty to train and supervise law enforcement officials. When the City either persistently fails to do so or shows a deliberate indifference to a policy that is the moving force behind the civilian's injuries, the City is liable under Section 1983. The City's officers were clearly indifferent to may client's medical needs.

Mr. Santiago was uncharacteristically walking in the roadway hindering the flow of traffic into the parking lot of a small strip center because he was in a seizure episode. The City's officers were the ones who picked my client from the ground where he had fallen but only after my client had been subjected to several applications of their M26 Taser.

The use of the taser was excessive and unreasonable under the circumstances. It was clear that my client was not in control of his bodily movements and exhibiting behavior akin to one undergoing some neurological or medical-related episode. Because of his illness, my client was unable to respond to verbal commands. The use of a taser is inappropriate when a suspect is nonresponsive due to physical, cognitive or mental illness when the condition is clearly manifested by the suspect's conduct. A situation that these officers should have been trained how to handle when confronted with it since, it is a foreseeable event in the life of an officer.

A city is responsible to ensure that its police force is adequately train to deal with those in the public who are mentally disturbed or exhibit some other form of medical condition or physical impairment. (*Russo v. City of Cincinnati*, 953 F.2d 1036 (6th Cir. 1992).

The use of the taser exacerbated the medical condition of my client. It is of no consequence that maybe the City's police force does not regularly encounter suspects with physical or mental conditions, even though it is highly unlikely that the City's law enforcement patrol have never encountered suspects with medical or mental impairment. Certainly, the situation the officers encountered on this day is one that a police officer can reasonably expect to confront. (*Brown v. Gray*, 227 F.3d 1278 (10th Cir. 2000).

Therefore, the City showed a deliberate indifference to the constitutional and civil rights of those suffering from mental or physical infirmities who because of that impairment, are unable to understand or respond to orders and cannot control their actions. These officers were not provided sufficient training and education so as to detect signs or behavior attributable to a medical condition. As a result of that deficiency, these officers mistakenly treated my client as a violent offender and

Notice of Claim
May 8, 2009
Page 4

used excessive force to subdue him when in reality, my client needed medical care. Instead, he was subjected to several applications of the taser gun under circumstances that did not warrant that force. Hence, the City is liable under Section 1983 for its employee's use of excessive force resulting in the violation of my client's rights under the 4th and 14th Amendment of the U.S. Constitution and his civil rights and constitutional rights under state law.

Apart from the above theories of recovery, the City is vicariously responsible for its officers' failure to use the proper and reasonable force under the circumstances. These officers used excessive force and were unreasonably aggressive in their attempt to control my client when he was undergoing an epileptic episode. Because of their negligence, my client had to be hospitalized for injuries resulting from the officers' negligence in both using excessive force and not recognizing or providing the necessary medical care to my client to protect him from suffering additional injuries.

## OFFICERS' LIABILITY

Each officer is liable for his use of excessive force that exceeded the force required under the circumstances. Each officer subjected my client to assault and battery in their use of unjustifiable and deadly force through their repeated application of the taser gun and repeated blows to the body.

These are the theories and basis of liability asserted by my client against the City and the officers.

In conclusion, the State Attorney's office decided to drop the action. We submit that said decision arose from the clear and irrefutable evidence that my client's actions were caused by his epileptic episode and not because he intended to resist arrest or disobey the orders of the officers at the scene. We have enclosed some medical records with this notice to better acquaint you with the injuries inflicted on my client.

The aforesaid presuit notice is furthermore supplemented by the following statement applicable to the Claimant: The Claimant does not have nor owe any prior adjudicated claim in excess of $200, involving fees, fines, penalties, judgments or victim restitution fund.

This letter shall serve as our formal notice under Section 768.28 that our client will pursue the theories of recovery set out above. In providing this notice, the claimant does not concede that this notice is a condition precedent to our instituting a claim under Section 1983. *See, Spooner v. Department of Corrections, State of Florida*, 488 So.2d 897 (Fla. 1st DCA 1986); *Maggio v. Florida Department of Labor and Employment Security, etc.*, 899 So.2d 1074 (Fla. 2005). This notice is provided as it pertains to the common law tort actions for which this presuit notice is required notwithstanding our intention of pursuing civil statutory and constitution remedies.

Notice of Claim
May 8, 2009
Page 5

PLEASE GOVERN YOURSELVES ACCORDINGLY.

Respectfully,

Gonzalo R. Dorta

GRD/
Enclosures

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To: Florida dept of Financial Serv.

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

7009 0820 0002 3648 1150

PS Form 3800, August 2006          See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Florida Department of
Financial Services
200 E. Gaines Street
Tallahassee, FL 32399-
                    0322.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                     ☐ Agent
                                      ☐ Addressee
B. Received by ( Printed Name)    C. Date of Delivery
                                   JUN 1 9 2009

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered        ☒ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)              ☐ Yes

2. Article Number
(Transfer from service label)    7009 0820 0002 3648 1150

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To MaYoR Julio Robaina
Street, Apt. No.; or PO Box No.
City, State, ZIP+4

PS Form 3800, August 2006                See Reverse for Instructions

7009 3686 2000 0820 7002 2232

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

MayoR Julio Robaina
City of Hialeah City
Hall
501 Palm Avenue, #A
Hialeah, Fl 33010

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☑ Agent  ☐ Addressee

B. Received by ( Printed Name)     C. Date of Delivery
Eddie Miranda

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered       ☑ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)      7009 0820 0002 3686 2232

S Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To  *Chief of Police, Mark*
Street, Apt. No.; or PO Box No.  *Overton*
City, State, ZIP+4

7009 0820 0002 3686 1136

PS Form 3800, August 2006          See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*Chief of Police,*
*Mark Overton*
*5555 East 8th Ave*
*Hialeah, FL 33013*

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
                                     *6/16/09*

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered   ☒ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7009 0820 0002 3686 1136

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI- DADE COUNTY, FLORIDA

GENERAL JURISDICTION

CASE NO. 10 - 24 746 CA 08

PEDRO SANTIAGO,

    PLAINTIFF,

vs.

CITY OF HIALEAH, a Political
Subdivision of the State of Florida,

    Defendant.

_____/

## PLAINTIFF'S NOTICE OF PROPOUNDING FIRST SET OF INTERROGATORIES TO DEFENDANT, CITY OF HIALEAH

The Plaintiff, PEDRO SANTIAGO (hereinafter "PLAINTIFF") by and through his undersigned counsel, hereby files this notice of propounding this first set of interrogatories directed to Defendant, CITY OF HIALEAH (hereinafter "CITY") to be answered in the manner and time prescribed by the Florida Rules of Civil Procedure.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed this 23rd day of April, 2010 and served together with the Complaint.

    GONZALO R. DORTA, P.A.
    334 Minorca Avenue
    Coral Gables, Florida 33134
    Telephone: 305-441-2299
    Telecopier: 305-428-2821

By: _____
    GONZALO R. DORTA
    Florida Bar No. 650269

## FIRST SET OF INTERROGATORIES TO DEFENDANT, CITY OF HIALEAH

1.  Disclose the name and job title of the person answering these interrogatories on behalf of the City of Hialeah including the names and addresses and job title or affiliation of all persons assisting the City in answering these interrogatories.

    **ANSWER:**

2.  Explain in detail how the subject incident occurred and what actions the responding City of Hialeah police officers took to avoid tasering the Plaintiff.

    **ANSWER:**

3.    Describe in detail what training the City of Hialeah provided to the responding officers on the use of taser guns; when taser guns should be used; when taser guns should not be used; how taker guns should be safely and reasonably used; and under what circumstances taser guns should be used.

      **ANSWER:**

4.    What particular type of training did each of the responding officers receive in connection with the proper use of taser guns?

      **ANSWER:**

3

5.     For each officer that responded to the subject scene provide a detail explanation of all the training said officer received through the day of the incident in connection with the following subject matters:

(a)     When a taser gun should not be used;

**ANSWER:**


(b)     Under what circumstances may a taser gun be used;

**ANSWER:**


(c)     What precautions must a police officer undertake when he or she decides to use a taser gun;

**ANSWER:**


(d)     Under what specific circumstances is a police officer recommended not to use or implement or resort to a taser gun;

**ANSWER:**


(e)     When a suspect is not responding to repeated police commands due to a medical and/or mental illness and/or incapacity, how should a police officer subdue the suspect is resisting arrest or police orders;

**ANSWER:**

4

(f)    Identifying and reacting to a suspect who is exhibiting uncontrollable or involuntarily and violent body movements due to probable physical, medical and/or neurological conditions when the police officer has determined that there is probable cause to arrest the suspect;

**ANSWER:**

(g)    Identifying and reacting to a suspect who is experiencing an epileptic seizure when the police officer has determined that he or she has a reasonable basis or probable cause to arrest said suspect.

**ANSWER:**

6.    Set forth with specificity all facts and circumstances that support each of your affirmative defenses and in your answer, disclose the name and business address of every witness who you believe may have some knowledge or information which is supportive of your affirmative defenses.

**ANSWER:**

7.  Did the City of Hialeah or anyone on its behalf or anyone on behalf of the County initiate an internal investigation into the facts and circumstances of this incident and if so answer the following:

    **ANSWER:**

    (a)  The date the internal investigation was initiated;

    **ANSWER:**

    (b)  Who ordered the initiation of said internal investigation;

    **ANSWER:**

    (c)  Was there a report generated in connection with the findings and conclusions of said internal investigation;

    **ANSWER:**

    (d)  If such report exist, who is the current records custodian of said report; and

    **ANSWER:**

(e)     Has any administrative action been taken against any of the responding officers due to the conclusions or findings in said internal investigative report?

**ANSWER:**

8.      Before the date of the subject incident, did the City of Hialeah have any manuals, protocols, training materials, that would educate, teach its police officers on how to determine whether a suspect that is not responding to police commands or order, or otherwise resisting arrest is doing so because said suspect is having an epileptic seizure; and if such training and/or training materials are used by the City of Hialeah Police Department to train its officers in this regard, identify with particularity the training materials and explain the extent, substance and scope of said training and whether each of the responding officers have successfully completed said training.

**ANSWER:**

7

9.   Has the responding City of Hialeah police officers ever reprimanded, demoted, disciplined, or otherwise have been subject to an adverse personnel decision as a member of the City of Hialeah police force and if so, disclose the name of the responding officer(s) that has been subject to any such personnel decision and explain why said personnel decision was taken by the City of Hialeah Police Department against said officer.

**ANSWER:**

8

## VERIFICATION

**STATE OF** _____ )
                                )ss
**COUNTY OF** _____ )

Before    me,    the    undersigned    authority    personally    appeared
_____, who, after being duly sworn deposes and says that
the answers to the Interrogatories set forth above are based on my personal knowledge, are true,
accurate and complete and are in no way misleading or calculated to withhold information that is
available to me and is requested by the Interrogatories.  I understand that by affixing my
signature below, I am subject to penalties of perjury.

Personally known to me        (_____)

Produced identification        (_____)
                                type of identification


_____
AFFIANT


**SWORN TO AND SUBSCRIBED** before me this _____ day of _____,
2010, in _____.


_____
Notary Public

My commission Expires:        _____

9

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION

PEDRO SANTIAGO,

CASE NO. 10-24746 CA 08

PLAINTIFF,

vs.

CITY OF HIALEAH, a Political
Subdivision of the State of Florida,

Defendant.

_____/

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION
## TO DEFENDANT, CITY OF HIALEAH

**COMES NOW,** the Plaintiff, PEDRO SANTIAGO, by and through his undersigned attorney, pursuant to Rule 1.350, Florida Rules of Civil Procedure, hereby requests that Defendant, CITY OF HIALEAH, (hereinafter "CITY"), produce the following documents to inspect and/or produce copies of the documents described below, within forty-five (45) days after service, hereof, at the Law Office of Gonzalo R. Dorta, P.A., 334 Minorca Avenue, Miami, Florida 33134.

## DOCUMENTS REQUESTED

1.      Produce the personnel file of each individual officer that responded to the incident involving the Plaintiff on September 28, 2007 at 2899 West 2nd Avenue, Hialeah, FL (hereinafter "Incident").

2.      Produce all records generated by the City of Hialeah Police Department in connection with the incident.

3.      Produce all police department manuals, protocols, training manuals, videos, inter-office memorandums and/or intra-office memorandums, bulletins relating, pertaining, and/or training its police officers on the proper use of taser guns.

4.      Produce all training records, including recommendation certificates, disciplinary action records, records of demotion, records of promotion, department and/or training evaluations on each of the officers involved in the Incident.

5.      Produce a copy of the results of all pre-employment medical and/or mental examinations performed on each of the officers involved in the Incident.

6.      Produce a copy of all reports arising from any internal investigation of the police officers behavior, conduct and/or work in connection with the Incident.

7.      Produce all department manuals, bulletins, books, procedures, memorandums, textbooks, videos, CDs, and all other written materials ever used by the City's Police Department to train, educate its police force on how to detect and/or react to suspect's suffering from a medical condition, epilepsy, epileptic seizure and/or manifesting neurological, physical and/or mental manifestation of an illness, impairment, health condition and/or physical ailment which hinders and/or prevents the suspect from coherently and responsibly adhering to commands and/or directives from the responding and/or arresting officers.

8.      All training manuals, written materials, department protocols and/or procedures on how responding police officers are to approach, treat, react and handle a suspect manifesting a seizure, convulsions and/or cardiac arrest or other medical conditions, resulting in uncontrollable body movements.

2

9.     All forms that the responding police officers involved in this Incident filled out and/or signed as a result of their use of a taser gun and/or use of deadly force if such force were signed and/or filled out or otherwise required by the police department in light of the use of a taser gun.

10.     All manufacturer specification, manuals, written materials describing the type, model of taser guns used on the Plaintiff including all maintenance records and/or maintenance schedules and/or repair records for each taser gun used in the subject Incident.

11.     All manufacturer and/or distributor provided and/or produced materials on the safe use, maintenance and operation of the subject taser guns employed at the scene of the Incident.

12.     All recordings of the complaints, communications, telephonic call to headquarters and/or to the dispatcher from any customer, citizen and/or merchant resulting in the subject officers being dispatched to the scene of the Incident.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed this 23rd day of April, 2010 and served together with the Complaint.

GONZALO R. DORTA, P.A.
334 Minorca Avenue
Coral Gables, Florida 33134
Telephone: 305-441-2299
Telecopier: 305-428-2821

By:     _____

GONZALO R. DORTA
Florida Bar No. 650269

3

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI- DADE COUNTY, FLORIDA

GENERAL JURISDICTION

CASE NO. 10 - 2 4 7 4 6 CA 08

PEDRO SANTIAGO,

     PLAINTIFF,

vs.

CITY OF HIALEAH, a Political
Subdivision of the State of Florida,

     Defendant.

_____/

## NOTICE OF TAKING DEPOSITION OF
## DESIGNATED CORPORATE REPRESENTATIVE(S)

     **PLEASE TAKE NOTICE** that the Plaintiff, by and through his undersigned counsel,

will take the deposition of the following individual(s) at the date, time and place indicated below:

| DEPONENT: | DATE/TIME: | LOCATION: |
|---|---|---|
| Corporate Representative(s) Designated by Defendant, CITY OF HIALEAH [1] | Tuesday, October 5, 2010 at 11:30 a.m. | Office of the Undersigned |

> In accordance with the Americans with Disabilities Act of 1990, persons needing a special accommodation to participate in this proceeding should contact Janel Diamond, Gonzalo R. Dorta, P.A. at 305 441-2299 and facsimile 305 441-8849.

\*     If an interpreter is needed, please advise at least five (5) business days in advance of the deposition date.

\*\*     If more than one corporate representative will be produced in light of the various subject matters of inquiry, please advise five (5) business days before the deposition date and in so doing, provide a written disclosure as to the subject matter and/or subject matters that

---

[1] Corporate Representative(s) designated by CITY OF HIALEAH to be the most knowledgeable with respect to the type, scope, and substance of all training provided to the responding officers relating to the use of taser guns; training, educating City's police officers, including the involved officers on how to confront, deal, subdue, control, effectuate and arrest and/or take into custody a suspect, citizen, individual exhibiting, manifesting signs of mental illness, cognitive imbalance, psychological, psychiatric problems, physical handicap, experiencing a seizure, convulsion; job performance of each involved officer; personnel history on each involved officer; and facts, circumstances surrounding the subject incident.

each designated representative will cover in order to properly accommodate your representatives and you.

The deposition will be under oath and conducted pursuant to the Florida Rules of Civil Procedure before an associate or deputy court reporter of Network Reporting, or their duly designated representative, who is not of counsel to any of the parties or interested in the outcome of the case. The deposition will continue from day to day until completed.

This deposition is being taken for the purpose of discovery, for use at trial, or for such other purposes as are permitted under the applicable and governing rules.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed this 23rd day of April, 2010 and served together with the Complaint.

GONZALO R. DORTA, P.A.
334 Minorca Avenue
Coral Gables, Florida 33134
Telephone: 305-441-2299
Telecopier: 305-441-8849

By: _____
GONZALO R. DORTA
Florida Bar No. 650269

cc:     Network Reporting

2

IN THE CIRCUIT COURT OF THE
11th JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 10-24746 CA 08

PEDRO SANTIAGO,

     Plaintiff,

vs.

THE CITY OF HIALEAH, a Political
Subdivision of the State of Florida,

     Defendants.

_____/



## NOTICE OF 768.28 (7) TIME PERIOD
## NOTICE OF APPEARANCE

     Defendant, **CITY OF HIALEAH**, puts all parties on notice of the provisions of section 768.28 (7), Florida Statutes, which provide that it shall have 30 days from the date of service upon an agency head within which to plead. The undersigned gives notice of appearance on behalf of the **CITY OF HIALEAH**, in this cause.

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been furnished by mail this **7th** day of **May, 2010** to: **GONZALO R. DORTA, ESQUIRE**, Gonzalo Dorta, P.A., 334 Minorca Avenue, Coral Gables, FL 33134.

                    William M. Grodnick, City Attorney
                    City of Hialeah
                    501 Palm Avenue – Fourth Floor
                    Hialeah, Florida 33010
                    Telephone: (305) 883-5853
                    Fax:     (305) 883-5896

By:            _____
                    Alan E. Krueger, Assistant City Attorney
                    Fla. Bar No.  151680

IN THE CIRCUIT COURT OF THE
11th JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

PEDRO SANTIAGO,

GENERAL JURISDICTION DIVISION

Plaintiff,

CASE NO. 10-24746 CA 08

vs.

THE CITY OF HIALEAH, a Political
Subdivision of the State of Florida,

JA  MAY 0 7 2010
IN THE OFFICE OF
CIRCUIT COURT DADE CO. FL

Defendants.

_____/

## NOTICE OF UNAVAILABILITY

PLEASE TAKE NOTICE that the undersigned attorney will be on vacation during

the period of June 25, 2010 through July 13, 2010.

Counsel respectfully requests that no trials, hearings, depositions, discovery or any

other matters be scheduled or rescheduled in this case during the aforementioned period.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has
been furnished by mail this **7th** day of **May, 2010** to: **GONZALO R. DORTA,
ESQUIRE**, Gonzalo Dorta, P.A., 334 Minorca Avenue, Coral Gables, FL 33134.

Alan E. Krueger
Assistant City Attorney
501 Palm Avenue – Fourth Floor
Hialeah, Florida 33010
Telephone: (305) 883-5853
Fax:  (305) 883-5896

By: _____
Alan E. Krueger
FBN 151680

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

PEDRO SANTIAGO,                          GENERAL JURISDICTION DIVISION

      Plaintiff,                         CASE NO. 10-24746 CA 08

vs.

THE CITY OF HIALEAH, a Political
Subdivision of the State of Florida,

      Defendants.
_____/

## DEFENDANT, CITY OF HIALEAH, NOTICE OF
## PRODUCTION FROM NON-PARTY

      YOU ARE HEREBY NOTIFIED that after ten (10) days from the date of service of this

Notice, the undersigned will apply to the Clerk of this Court for issuance of the attached

subpoena(s) directed to:

a.    **MRC/ Dr. Merredith R. Lowe;**
b.    **RC/Epilepsy Foundation of America, Inc.;**
c.    **RC/Florida Department of Law Enforcement;**
d.    **RC/Florida Dept. of Highway Safety & Motor Vehicles; and**
e.    **RC/Hialeah Convalescent Home, Inc.**

who are not parties, to produce the items listed at the time and place specified in the subpoena.

### CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been
furnished by facsimile and U.S. Regular Mail this **13th** day of **May, 2010** to: **GONZALO R.
DORTA, ESQUIRE,** Gonzalo R. Dorta, P.A., 334 Minorca Avenue, Coral Gables, FL 33134.

                      Alan E. Krueger
                      Assistant City Attorney
                      501 Palm Avenue – Fourth Floor
                      Hialeah, Florida  33010
                      Telephone: (305) 883-5853
                      Fax:    (305) 883-5896

                      By: _____

                        Alan E. Krueger
                        FBN 151680

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 10-24746 CA 08

PEDRO SANTIAGO,

      Plaintiff,

vs.

THE CITY OF HIALEAH, a Political
Subdivision of the State of Florida,

      Defendant.

_____/

**SUBPOENA DUCES TECUM**
**FOR PRODUCTION WITHOUT**
**DEPOSITION**

THE STATE OF FLORIDA

**TO:**   **Employment Records Custodian**
      **Hialeah Convalescent Home, Inc.**
      **c/o Hialeah Enterprise, LLC.**
      **By service on its registered agent**
      **CT Corporation**
      **1200 S. Pine Island Road, Ste. 250**
      **Plantation, FL 33324**

      **(NO APPEARANCE NECESSARY IF RECORDS ARE MAILED IN.)**

      YOU ARE COMMANDED to appear at the office of the City Attorney, City of Hialeah, at
501 Palm Avenue, Fourth Floor, Hialeah, Florida 33010, on **Tuesday, June 1, 2010, at 10:30 a.m.**,
and to have with you (or mail in) at that time and place the following:

      a.      **Any and all personnel records, application for employment,
correspondence and/or memoranda, records relating to reviews and/or
promotions, workers' compensation records and/or claims, insurance
records and/or claims, pre-employment physical(s)/medicals, time cards,
time sheets, records relating to lost wages and/or days absent, salary
records, payroll records, W-2 forms, W-4 forms, injury forms, including
but not limited to any and all documents and/or records pertaining to
employment of: PEDRO SANTIAGO aka PEDRO SANTANA aka
PEDRO SANTANA SANTIAGO aka PEDRO SANTIAGO
SANTANA; S.S.N.:▮▮▮▮▮; D/O/B:▮▮▮▮▮▮**

      b.      **Any and all rules, regulations and policies applicable to employing
nursing and/or medical personnel with a neurological dysfunction [i.e.
epileptic seizures] who have or may have patient care responsibilities.**

Subpoena Duces Tecum
Without Deposition

c.      Any and all rules, regulations and policies applicable to nursing and/or medical personnel who suffer from a neurological dysfunction [i.e. epileptic seizures] and who are involved directly or indirectly with the care of patients in your facility.

d.      Any and all rules, regulations and policies regarding disclosure by nurses and/or medical staff regarding any medical condition that may affect that employee's work or which require special accommodation by your institution.

e.      All lawsuits naming Hialeah Convalescent Home, Inc., Hialeah Enterprise, LLC and/or any of its nurses, doctors or employees as Plaintiff(s) for the treatment and/or care of a patient attended by Plaintiff, Pedro Santiago.

This Subpoena requires production of your complete file contents. You are to produce each and every piece of paper contained in your file regarding the above individual, whether or not prepared by you. This further includes telephone messages, letters from attorneys, letters from the above individual, or from any other source. You are not permitted to edit or delete items. Failure to comply fully may result in court sanctions.

**If the costs of preparation and reproduction exceed One Hundred ($100.00) Dollars you must contact the City Attorney's Office before forwarding the requested documents. If not, the City Attorney's Office may not satisfy the full amount requested.**

---

**ASSURANCE OF NOTIFICATION REQUIRED BY HIPPAA SECTION 164.512**

1. The subpoenaing party made a good faith attempt to provide written notice to the plaintiff.
2. The Notice was sufficient to permit the individual to object.
3. The time for the individual to object expired.
4. No objection were filed or all objections were resolved in favor of disclosure, in compliance with 45 C.F.R. Sec. 164.512 (e)(1).

---

These items will be inspected and may be copied at that time. You will not be required to surrender the original items. You may comply with this subpoena by providing legible copies of the items to be produced to the attorney whose name appears on this subpoena on or before the scheduled date of production. You may condition the preparation of the copies upon the payment in advance of the reasonable cost of preparation. You may mail or deliver the copies to the attorney whose name appears on this subpoena and thereby eliminate your appearance at the time and place specified above. You have the right to object to the production pursuant to this subpoena at any time before the production by giving written notice to the attorney whose name appears on the subpoena.

If you fail to:

2

**Subpoena Duces Tecum**
**Without Deposition**

1.  appear as specified;
2.  furnish the records instead of appearing as provided above; or
3.  object to this subpoena,

you may be in contempt of Court. You are subpoenaed by the attorney whose name appears on this subpoena. Unless excused from this subpoena by that attorney or the Court, you must respond to this subpoena as directed.

IN WITNESS, I sign and affix the seal of the Court on this **13th** day of **May, 2010**.

> Respectfully submitted,
> City of Hialeah
> 501 Palm Avenue, Fourth Floor
> Hialeah, FL 33010
> Telephone: (305) 883-5930
>
> By: Alan E. Krueger, Asst. City Attorney
> FBN 151680

3

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 10-24746 CA 08

PEDRO SANTIAGO,

        Plaintiff,

vs.

THE CITY OF HIALEAH, a Political
Subdivision of the State of Florida,

        Defendant.

_____/

**SUBPOENA *DUCES TECUM*
FOR PRODUCTION WITHOUT
DEPOSITION**

THE STATE OF FLORIDA

**TO:   Records Custodian
Epilepsy Foundation of America, Inc.
By service on its registered agent
CT Corporation
1200 S. Pine Island Road, Ste. 250
Plantation, FL 33324**

**(NO APPEARANCE NECESSARY IF RECORDS ARE MAILED IN.)**

      YOU ARE COMMANDED to appear at the office of the City Attorney, City of Hialeah, at 501 Palm Avenue, Fourth Floor, Hialeah, Florida 33010, on **Tuesday, June 1, 2010, at 11:00 a.m.**, and to have with you (or mail in) at that time and place the following:

      **a.  Any and all documentation, including but not limited to, studies, statistics, and research conducted by your organization or on behalf of the Epilepsy Foundation of America that indicates the number of epileptic seizures that occur yearly in the City of Hialeah.**

      **b.  Any and all communications between Plaintiff, Pedro Santiago aka Pedro Santana aka Pedro Santiago Santana aka Pedro Santana Santiago, and/or his representative(s) or lawyer(s) and the Epilepsy Foundation of America, Inc. regarding the subject lawsuit.**

      **c.  Any and all communications between Plaintiff, Pedro Santiago aka Pedro Santana aka Pedro Santiago Santana aka Pedro Santana Santiago, and/or his representative(s) or lawyer(s) and the Epilepsy Foundation of America, Inc. regarding Miami-Dade Criminal Case No.** ▇▇▇▇▇▇

      **d.  Any and all documents evidencing payment of attorney's fees by the Epilepsy Foundation of America to Gonzalo Dorta, P.A., the Law Offices of Roberto Pertierra, P.A. or any other attorney representing   Plaintiff, Pedro**

Subpoena Duces Tecum
Without Deposition

Santiago aka Pedro Santana aka Pedro Santiago Santana aka Pedro
Santana Santiago.

e.  Any form agreements for representing individuals with epilepsy or other
neurological dysfunctions in lawsuits against federal, state, county or
municipal governments.

f.  Any and all documents [i.e. written studies, reports, research, summaries,
articles] on epileptics' interaction with police in the possession of the
Epilepsy Foundation of America.

g.  List of the names of any and all doctors that the Epilepsy Foundation has
referred to Plaintiff attorneys suing state, county, federal or municipal
governments on behalf of a Plaintiff suffering from epilepsy.

h.  All documentation in your possession evidencing that any given body
movement that occurs by an individual at some point during an encounter
with police is an epileptic seizure and can be determine to be involuntary
and beyond the control of the individual.

i.  Any documentation that would determine at what point in the moments
preceding, including and subsequent to an epileptic seizure, a police officer
encountering an epileptic should be able to distinguish voluntary from
involuntary movements.

j.  Any and all resources, documents, training manuals, videos and/or
photographs disseminated to law enforcement agencies by the Epilepsy
Foundation to educate law enforcement officers on how to differentiate an
individual suffering from an epileptic seizure from a violent subject not
obeying the commands of an officer and resisting arrest with violence.

k.  Any and all documentation pertaining to communications from the
Epilepsy Foundation or persons acting on its behalf to the City of Hialeah
and/or its police department that alert or substantiate the existence of an
alleged problem in the manner in which Hialeah Police Officers respond to
epileptics.

l.  Any and all documentation pertaining to communications from City of
Hialeah and/or its police department to the Epilepsy Foundation or persons
acting on its behalf seeking information on the Foundation's
recommendations regarding the appropriate manner in which police
officers should be encouraged to respond to epileptics.

If the costs of preparation and reproduction exceed One Hundred ($100.00) Dollars
you must contact the City Attorney's Office before forwarding the requested documents. If
not, the City Attorney's Office may not satisfy the full amount requested.

---

**ASSURANCE OF NOTIFICATION REQURED BY HIPPAA SECTION 164.512**

1.  The subpoenaing party made a good faith attempt to provide written notice to the
plaintiff.
2.  The Notice was sufficient to permit the individual to object.
3.  The time for the individual to object expired.
4.  No objection were filed or all objections were resolved in favor of disclosure, in
compliance with 45 C.F.R. Sec. 164.512 (e)(1).

**Subpoena Duces Tecum**
**Without Deposition**

These items will be inspected and may be copied at that time. You will not be required to surrender the original items. You may comply with this subpoena by providing legible copies of the items to be produced to the attorney whose name appears on this subpoena on or before the scheduled date of production. You may condition the preparation of the copies upon the payment in advance of the reasonable cost of preparation. You may mail or deliver the copies to the attorney whose name appears on this subpoena and thereby eliminate your appearance at the time and place specified above. You have the right to object to the production pursuant to this subpoena at any time before the production by giving written notice to the attorney whose name appears on the subpoena.

If you fail to:

1.    appear as specified;
2.    furnish the records instead of appearing as provided above; or
3.    object to this subpoena,

you may be in contempt of Court. You are subpoenaed by the attorney whose name appears on this subpoena. Unless excused from this subpoena by that attorney or the Court, you must respond to this subpoena as directed.

IN WITNESS, I sign and affix the seal of the Court on this **13th** day of **May, 2010.**

> Respectfully submitted,
> City of Hialeah
> 501 Palm Avenue, Fourth Floor
> Hialeah, FL 33010
> Telephone: (305) 883-5930
>
> By:    Alan E. Krueger, Asst. City Attorney
>        FBN 151680

3

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 10-24746 CA 08

PEDRO SANTIAGO,

      Plaintiff,

vs.

THE CITY OF HIALEAH, a Political
Subdivision of the State of Florida,

      Defendant.

_____/

**SUBPOENA DUCES TECUM
FOR PRODUCTION WITHOUT
DEPOSITION**

THE STATE OF FLORIDA

**TO:  Records Custodian
Florida Department of Law Enforcement
2331 Phillips Raod
Tallahassee, FL 32308**

### (NO APPEARANCE NECESSARY IF RECORDS ARE MAILED IN.)

    YOU ARE COMMANDED to appear at the office of the City Attorney, City of Hialeah, at
501 Palm Avenue, Fourth Floor, Hialeah, Florida 33010, on **Tuesday, June 1, 2010, at 11:30 a.m.**,
and to have with you (or mail in) at that time and place the following:

a.    **Complete Criminal History re: PEDRO SANTIAGO aka PEDRO
SANTANA aka PEDRO SANTANA SANTIAGO aka PEDRO
SANTIAGO SANTANA; S.S.N.:**      **D/O/B:**
**Drivers License No.**

b.    **Any and all documents in your agency's possession applicable to Miami-
Dade Criminal Case No.**      **State of Florida vs. Pedro Santiago.**

c.    **Any and all correspondence, email transmittals, forms, facsimiles,
motions filed and/or provided by PEDRO SANTIAGO and/or his
attorney or agent, to your agency regarding the expungement of Miami-
Dade Criminal Case No.**

d.    **All documents generated by your agency to determine if Miami-Dade
Criminal Case No.**      **was eligible for expungement;**

e.    **Your agency's complete file regarding the expungement of Miami-Dade
Criminal Case No.**

Subpoena Duces Tecum
Without Deposition

This Subpoena requires production of your complete file contents. You are to produce each and every piece of paper contained in your file regarding the above individual, whether or not prepared by you. This further includes telephone messages, letters from attorneys, letters from the above individual, or from any other source. You are not permitted to edit or delete items. Failure to comply fully may result in court sanctions.

**If the costs of preparation and reproduction exceed One Hundred ($100.00) Dollars you must contact the City Attorney's Office before forwarding the requested documents. If not, the City Attorney's Office may not satisfy the full amount requested.**

---

**ASSURANCE OF NOTIFICATION REQURED BY HIPPAA SECTION 164.512**

1. **The subpoenaing party made a good faith attempt to provide written notice to the plaintiff.**
2. **The Notice was sufficient to permit the individual to object.**
3. **The time for the individual to object expired.**
4. **No objection were filed or all objections were resolved in favor of disclosure, in compliance with 45 C.F.R. Sec. 164.512 (e)(1).**

---

These items will be inspected and may be copied at that time. You will not be required to surrender the original items. You may comply with this subpoena by providing legible copies of the items to be produced to the attorney whose name appears on this subpoena on or before the scheduled date of production. You may condition the preparation of the copies upon the payment in advance of the reasonable cost of preparation. You may mail or deliver the copies to the attorney whose name appears on this subpoena and thereby eliminate your appearance at the time and place specified above. You have the right to object to the production pursuant to this subpoena at any time before the production by giving written notice to the attorney whose name appears on the subpoena.

If you fail to:

1. appear as specified;
2. furnish the records instead of appearing as provided above; or
3. object to this subpoena,

you may be in contempt of Court. You are subpoenaed by the attorney whose name appears on this subpoena. Unless excused from this subpoena by that attorney or the Court, you must respond to this subpoena as directed.

**Subpoena Duces Tecum**
**Without Deposition**

IN WITNESS, I sign and affix the seal of the Court on this **13th** day of **May, 2010**.

Respectfully submitted,
City of Hialeah
501 Palm Avenue, Fourth Floor
Hialeah, FL 33010
Telephone: (305) 883-5930

By:   Alan E. Krueger, Asst. City Attorney
      FBN 151680

3

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 10-24746 CA 08

PEDRO SANTIAGO,

      Plaintiff,

vs.

THE CITY OF HIALEAH, a Political
Subdivision of the State of Florida,

      Defendant.

_____/

**SUBPOENA DUCES TECUM
FOR PRODUCTION WITHOUT
DEPOSITION**

THE STATE OF FLORIDA

**TO:**    **Records Custodian
Florida Department of Highway Safety
  & Motor Vehicles
Neil Kirkman Building
2900 Apalachee Parkway
Tallahassee, FL 32399-0500**

**(NO APPEARANCE NECESSARY IF RECORDS ARE MAILED IN.)**

YOU ARE COMMANDED to appear at the office of the City Attorney, City of Hialeah, at 501 Palm Avenue, Fourth Floor, Hialeah, Florida 33010, on **Tuesday, June 1, 2010, at 11:00 a.m.**, and to have with you (or mail in) at that time and place the following:

    a.    **Florida Drivers Transcript covering the past seven (7) years for PEDRO SANTIAGO aka PEDRO SANTANA aka PEDRO SANTANA SANTIAGO aka PEDRO SANTIAGO SANTANA; S.S.N.:** ▉▉▉▉

    ▉    **Any and all correspondence, email transmittals, forms, facsimiles, memos sent by PEDRO SANTIAGO and/or his doctor or agent, notifying the FDHSMV that he suffers from neurological dysfunctions [i.e. epileptic seizures];**

    c.    **Any and all correspondence, email transmittals, forms, facsimiles, memos, etc. between FDHSMV and PEDRO SANTIAGO and/or his doctors or agents, regarding the cancellation and/or reinstatement of his drivers license as a result of his neurological dysfunctions [i.e. epileptic seizures].**

    d.    **Any and all medical reports, laboratory results, radiological reports, submitted by PEDRO SANTIAGO or any doctor or agent on his behalf**

Subpoena Duces Tecum
Without Deposition

to the Medical Advisory Board – Division of Drivers License, requesting the reinstatement of Mr. Santiago's driving privileges.

e.   Any and all correspondence, reports, internal reviews sent by the Medical Advisory Board – Division of Drivers License to PEDRO SANTIAGO and/or any doctor or agent on his behalf.

f.   FDHSMV's rules, regulations and policies regarding drivers in the State of Florida who suffer from a neurological condition [i.e. epileptic seizure].

g.   Any and all Driver Medical Reports filed and received by FDHSMV notifying the agency of PEDRO SANTIAGO'S neurological dysfunction [i.e. epileptic seizures].

This Subpoena requires production of your complete file contents. You are to produce each and every piece of paper contained in your file regarding the above individual, whether or not prepared by you. This further includes telephone messages, letters from attorneys, letters from the above individual, or from any other source. You are not permitted to edit or delete items. Failure to comply fully may result in court sanctions.

**If the costs of preparation and reproduction exceed One Hundred ($100.00) Dollars you must contact the City Attorney's Office before forwarding the requested documents. If not, the City Attorney's Office may not satisfy the full amount requested.**

---

**ASSURANCE OF NOTIFICATION REQURED BY HIPPAA SECTION 164.512**

1. The subpoenaing party made a good faith attempt to provide written notice to the plaintiff.
2. The Notice was sufficient to permit the individual to object.
3. The time for the individual to object expired.
4. No objection were filed or all objections were resolved in favor of disclosure, in compliance with 45 C.F.R. Sec. 164.512 (e)(1).

---

These items will be inspected and may be copied at that time. You will not be required to surrender the original items. You may comply with this subpoena by providing legible copies of the items to be produced to the attorney whose name appears on this subpoena on or before the scheduled date of production. You may condition the preparation of the copies upon the payment in advance of the reasonable cost of preparation. You may mail or deliver the copies to the attorney whose name appears on this subpoena and thereby eliminate your appearance at the time and place specified above. You have the right to object to the production pursuant to this subpoena at any time before the production by giving written notice to the attorney whose name appears on the subpoena.

If you fail to:

1.   appear as specified;

**Subpoena Duces Tecum**
**Without Deposition**

      2.     furnish the records instead of appearing as provided above; or

      3.     object to this subpoena,

you may be in contempt of Court. You are subpoenaed by the attorney whose name appears on this subpoena. Unless excused from this subpoena by that attorney or the Court, you must respond to this subpoena as directed.

     IN WITNESS, I sign and affix the seal of the Court on this **13th** day of **May, 2010.**

                   Respectfully submitted,
                   City of Hialeah
                   501 Palm Avenue, Fourth Floor
                   Hialeah, FL 33010
                   Telephone: (305) 883-5930

             By:    Alan E. Krueger, Asst. City Attorney
                       FBN 151680

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 10-24746 CA 08

PEDRO SANTIAGO,

      Plaintiff,

vs.

THE CITY OF HIALEAH, a Political
Subdivision of the State of Florida,

      Defendant.

_____/

**SUBPOENA *DUCES TECUM***
**FOR PRODUCTION WITHOUT**
**DEPOSITION**

THE STATE OF FLORIDA

**TO:** **Medical Records Custodian**
**Dr. Merredith R. Lowe**
**1120 N.W. 14 Street**
**Ste. 1328**
**Miami, FL 33136**

### (NO APPEARANCE NECESSARY IF RECORDS ARE MAILED IN.)

YOU ARE COMMANDED to appear at the office of the City Attorney, City of Hialeah, at
501 Palm Avenue, Fourth Floor, Hialeah, Florida 33010, on **Tuesday, June 1, 2010, at 10:00 a.m.**,
and to have with you (or mail in) at that time and place the following:

    a. **Any and all medical records, including but not limited to, charts, notes**
**memoranda, correspondence, reports, summaries, evaluations, laboratory test**
**results, x-ray and test results, MRI, CT scans, films, and all other documents**
**pertaining to treatment, examination and/or hospitalization for services**
**rendered to: PATIENT: PEDRO SANTIAGO aka PEDRO SANTANA aka**
**PEDRO SANTIAGO SANTANA aka PEDRO SANTANA SANTIAGO;**
**S.S.N.:**     **; D/O/B:**     **.**

    b. **Any and all correspondence between PEDRO SANTIAGO aka PEDRO**
**SANTANA aka PEDRO SANTIAGO SANTANA aka PEDRO SANTANA**
**SANTIAGO and/or his attorney and you;**

    c. **All records and documents that support your testimony at the deposition held**
**on July 2, 2008, in Miami-Dade Criminal Case No.**     **Copy of the**
**deposition is attached.**

    d. **Any and all correspondence between Scott Miller, Assistant State Attorney,**
**David Turken, Assistant State Attorney and/or Roberto Pertierra, Esquire and**
**you or any employee and/or representative of your office.**

Subpoena Duces Tecum
Without Deposition

This Subpoena requires production of your complete file contents. You are to produce each and every piece of paper contained in your file regarding the above patient, whether or not prepared by you. This further includes telephone messages, letters from attorneys, letters from the above individual, or from any other source. You are not permitted to edit or delete items. Failure to comply fully may result in court sanctions.

**If the costs of preparation and reproduction exceed One Hundred ($100.00) Dollars you must contact the City Attorney's Office before forwarding the requested documents. If not, the City Attorney's Office may not satisfy the full amount requested.**

---

### ASSURANCE OF NOTIFICATION REQURED BY HIPPAA SECTION 164.512

1. **The subpoenaing party made a good faith attempt to provide written notice to the plaintiff.**
2. **The Notice was sufficient to permit the individual to object.**
3. **The time for the individual to object expired.**
4. **No objection were filed or all objections were resolved in favor of disclosure, in compliance with 45 C.F.R. Sec. 164.512 (e)(1).**

---

These items will be inspected and may be copied at that time. You will not be required to surrender the original items. You may comply with this subpoena by providing legible copies of the items to be produced to the attorney whose name appears on this subpoena on or before the scheduled date of production. You may condition the preparation of the copies upon the payment in advance of the reasonable cost of preparation. You may mail or deliver the copies to the attorney whose name appears on this subpoena and thereby eliminate your appearance at the time and place specified above. You have the right to object to the production pursuant to this subpoena at any time before the production by giving written notice to the attorney whose name appears on the subpoena.

If you fail to:

1.    appear as specified;
2.    furnish the records instead of appearing as provided above; or
3.    object to this subpoena,

you may be in contempt of Court. You are subpoenaed by the attorney whose name appears on this subpoena. Unless excused from this subpoena by that attorney or the Court, you must respond to this subpoena as directed.

2

**Subpoena Duces Tecum**
**Without Deposition**

IN WITNESS, I sign and affix the seal of the Court on this **13th** day of **May, 2010.**

Respectfully submitted,
William M. Grodnick
City Attorney - City of Hialeah
501 Palm Avenue, Fourth Floor
Hialeah, Fl, 33010
Telephone (305) 883-5920

By:   Alan E. Krueger, Asst City Attorney
      FBN 151680

3

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI- DADE COUNTY, FLORIDA

GENERAL JURISDICTION

PEDRO SANTIAGO,

CASE NO. 10-24746 CA 08

PLAINTIFF,

vs.

CITY OF HIALEAH, a Political
Subdivision of the State of Florida,

Defendant.

_____/

**REQUEST FOR COPIES OF
DOCUMENTS RECEIVED
PURSUANT TO SUBPOENA**

**COME NOW** the Plaintiff by and through his undersigned counsel and requests that counsel for Defendant provide copies of any and all documents received from the following individuals pursuant to their Notice of Production From Non-Party, within 5 days of receipt by defense counsel:

1.      M/R/C – Dr. Meredith R. Lowe; and

2.      R/C – Epilepsy Foundation of America, Inc..

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was sent by U.S. Mail [and/or facsimile transmission] this 19th day of May, 2010 to: **Alan E. Krueger, Esq.,** Assistant City Attorney, 501 Palm Avenue, Fourth Floor, Hialeah, Florida 33010 [Fax 305-883-5896].

GONZALO R. DORTA, P.A.
334 Minorca Avenue
Coral Gables, Florida 33134
Telephone: 305/441-2299
Telecopier: 305/441-8849

By: _____
GONZALO R. DORTA
Florida Bar No. 650269

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI- DADE COUNTY, FLORIDA

GENERAL JURISDICTION

PEDRO SANTIAGO,                    CASE NO. 10-24746 CA 08

      PLAINTIFF,

vs.

CITY OF HIALEAH, a Political
Subdivision of the State of Florida,

      Defendant.

_____/

## PLAINTIFF'S OBJECTIONS AND MOTION FOR PROTECTIVE ORDER

**COMES NOW** the Plaintiff, PEDRO SANTIAGO ("Plaintiff"), by and through his undersigned counsel, and moves for a protective order on the non-party subpoenas directed to Florida Department of Law Enforcement, Florida Department of Highway Safety & Motor Vehicles, and Hialeah Convalescent Home, Inc ("Employer"), and in support states as follows:

1.    City has been sued for excessive use of force arising from multiple, unnecessary tasering of Plaintiff who was having an epileptic seizure and laid defenseless on the ground.

2.    The production sought from Plaintiff's Employer is wholly irrelevant, done to harass and further strain the employment relationship. Except for Plaintiff's personnel file, all other records are not designed to lead to discovery of admissible evidence.

3.    Similarly, the request directed to Florida Department of Law Enforcement is also aimed at harassing the Plaintiff since the court has already expunged Plaintiff's record arising from the City's unlawful; arrest and thus, all of the discovery sought by the City on this matter should be foreclosed. In fact, the City was even unsuccessful in its recent appeal to get the

CASE NO. 10-24746 CA 08

expunged records. (See 3DCA Opinion at Exhibit "A"). Hence, the subpoena is objectionable and the protection should be disallowed.

4.     Likewise, the City's subpoena to seek personnel records from the State's driver's bureau is also aimed to harass and not to lead to the discovery of admissible evidence. Except for those records already of public record, this Court should deny this discovery.

**WHEREFORE**, Plaintiff objects to the aforesaid subpoena.

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was sent by U.S. Mail [and/or facsimile transmission] this _9th_ day of May, 2010 to: **Alan E. Krueger, Esq.,** Assistant City Attorney, 501 Palm Avenue, Fourth Floor, Hialeah, Florida 33010 [Fax 305-883-5896].

GONZALO R. DORTA, P.A.
334 Minorca Avenue
Coral Gables, Florida 33134
Telephone: 305-441-2299
Telecopier: 305-441-8849

By: _____
GONZALO R. DORTA
Florida Bar No. 650269

2



IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

THIRD DISTRICT

JULY TERM, A.D. 2009

DECEMBER 8, 2009

CITY OF HIALEAH,                          CASE NO.: 3D09-2757

Appellant(s)/Petitioner(s),

vs.

                                          LOWER
P.S.,                                     TRIBUNAL NO.   07-34046

Appellee(s)/Respondent(s).


    ORDERED that appellee's motion to dismiss appeal is granted, and this appeal from the Circuit Court for Miami-Dade County, Florida is hereby dismissed.

    Upon consideration of the motion for attorney's fees filed by appellee, it is ordered that said motion is hereby denied.

    WELLS, SUAREZ and SALTER, JJ., concur.



cc:
Michael Fertig                    Roberta Pertierra
Gonzalo R. Dorta                  Alan E. Krueger
Tanya Earley                      Harvey Ruvin
Hon. Nushin Sayfie
ag



EXHIBIT

A

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

PEDRO SANTIAGO,                          GENERAL JURISDICTION DIVISION

     Plaintiff,                         CASE NO. 10-24746 CA 08

vs.

THE CITY OF HIALEAH, a Political
Subdivision of the State of Florida,

     Defendants.
_____/



THE ORIGINAL FILED
ON MAY 25 2010
IN THE OFFICE OF
CIRCUIT COURT DADE CO FL

### CERTIFICATE OF NO OBJECTION TO SUBPOENAS UNDER
### RULE 1.351 FOR PRODUCTION OF DOCUMENTS WITHOUT DEPOSITION

    I HEREBY CERTIFY that no objections to production under Rule 1.351, Florida Rules

of Civil Procedure, have been filed by Plaintiff on Defendant's Notice of Intent to Serve

Subpoena(s) for Production of Documents Without Deposition upon persons who are non-

parties, directing the production and/or things without deposition, *to-wit*:

    **a.**    **MRC/ Dr. Merredith R. Lowe; and**
    **b.**    **RC/Epilepsy Foundation of America, Inc.**

### CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been
furnished by facsimile and U.S. Regular Mail this **24th** day of **May, 2010** to: **GONZALO R.
DORTA, ESQUIRE,** Gonzalo R. Dorta, P.A., 334 Minorca Avenue, Coral Gables, FL 33134.

                    Alan E. Krueger
                    Assistant City Attorney
                    501 Palm Avenue – Fourth Floor
                    Hialeah, Florida  33010
                    Telephone:  (305) 883-5853
                    Fax:          (305) 883-5896

                    By: _____
                         Alan E. Krueger
                         FBN 151680

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 10-24746 CA 08

PEDRO SANTIAGO,

      Plaintiff,

vs.

THE CITY OF HIALEAH, a Political
Subdivision of the State of Florida,

      Defendant.

_____/

**SUBPOENA *DUCES TECUM***
**FOR PRODUCTION WITHOUT**
**DEPOSITION**

THE STATE OF FLORIDA

**TO:**  **Medical Records Custodian**
      **Dr. Merredith R. Lowe**
      **1120 N.W. 14 Street**
      **Ste. 1328**
      **Miami, FL 33136**

**(NO APPEARANCE NECESSARY IF RECORDS ARE MAILED IN.)**

YOU ARE COMMANDED to appear at the office of the City Attorney, City of Hialeah, at 501 Palm Avenue, Fourth Floor, Hialeah, Florida 33010, on **Tuesday, June 1, 2010, at 10:00 a.m.**, and to have with you (or mail in) at that time and place the following:

    **a.** **Any and all medical records, including but not limited to, charts, notes memoranda, correspondence, reports, summaries, evaluations, laboratory test results, x-ray and test results, MRI, CT scans, films, and all other documents pertaining to treatment, examination and/or hospitalization for services rendered to: PATIENT: PEDRO SANTIAGO aka PEDRO SANTANA aka PEDRO SANTIAGO SANTANA aka PEDRO SANTANA SANTIAGO; S.S.N.:**        **D/O/B:**

    **b.** **Any and all correspondence between PEDRO SANTIAGO aka PEDRO SANTANA aka PEDRO SANTIAGO SANTANA aka PEDRO SANTANA SANTIAGO and/or his attorney and you;**

    **c.** **All records and documents that support your testimony at the deposition held on July 2, 2008, in Miami-Dade Criminal Case No.**        **. Copy of the deposition is attached.**

    **d.** **Any and all correspondence between Scott Miller, Assistant State Attorney, David Turken, Assistant State Attorney and/or Roberto Pertierra, Esquire and you or any employee and/or representative of your office.**

**Subpoena Duces Tecum**
**Without Deposition**

This Subpoena requires production of your complete file contents. You are to produce each and every piece of paper contained in your file regarding the above patient, whether or not prepared by you. This further includes telephone messages, letters from attorneys, letters from the above individual, or from any other source. You are not permitted to edit or delete items. Failure to comply fully may result in court sanctions.

**If the costs of preparation and reproduction exceed One Hundred ($100.00) Dollars you must contact the City Attorney's Office before forwarding the requested documents. If not, the City Attorney's Office may not satisfy the full amount requested.**

---

**ASSURANCE OF NOTIFICATION REQURED BY HIPPAA SECTION 164.512**

1. **The subpoenaing party made a good faith attempt to provide written notice to the plaintiff.**
2. **The Notice was sufficient to permit the individual to object.**
3. **The time for the individual to object expired.**
4. **No objection were filed or all objections were resolved in favor of disclosure, in compliance with 45 C.F.R. Sec. 164.512 (e)(1).**

---

These items will be inspected and may be copied at that time. You will not be required to surrender the original items. You may comply with this subpoena by providing legible copies of the items to be produced to the attorney whose name appears on this subpoena on or before the scheduled date of production. You may condition the preparation of the copies upon the payment in advance of the reasonable cost of preparation. You may mail or deliver the copies to the attorney whose name appears on this subpoena and thereby eliminate your appearance at the time and place specified above. You have the right to object to the production pursuant to this subpoena at any time before the production by giving written notice to the attorney whose name appears on the subpoena.

If you fail to:

1. appear as specified;
2. furnish the records instead of appearing as provided above; or
3. object to this subpoena,

you may be in contempt of Court. You are subpoenaed by the attorney whose name appears on this subpoena. Unless excused from this subpoena by that attorney or the Court, you must respond to this subpoena as directed.

**Subpoena Duces Tecum**
**Without Deposition**

IN WITNESS, I sign and affix the seal of the Court on this **24th** day of **May, 2010.**

Respectfully submitted,
William M. Grodnick
City Attorney - City of Hialeah
501 Palm Avenue, Fourth Floor
Hialeah, FL 33010
Telephone: (305) 883-5930

By:    Alan E. Krueger, Asst. City Attorney
       FBN 151680

3

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 10-24746 CA 08

PEDRO SANTIAGO,

       Plaintiff,

vs.

THE CITY OF HIALEAH, a Political
Subdivision of the State of Florida,

       Defendant.

_____/

**SUBPOENA *DUCES TECUM*
FOR PRODUCTION WITHOUT
DEPOSITION**

THE STATE OF FLORIDA

**TO:**    **Records Custodian
Epilepsy Foundation of America, Inc.
By service on its registered agent
CT Corporation
1200 S. Pine Island Road, Ste. 250
Plantation, FL 33324**

### (NO APPEARANCE NECESSARY IF RECORDS ARE MAILED IN.)

YOU ARE COMMANDED to appear at the office of the City Attorney, City of Hialeah, at 501 Palm Avenue, Fourth Floor, Hialeah, Florida 33010, on **Tuesday, June 1, 2010, at 11:00 a.m.**, and to have with you (or mail in) at that time and place the following:

    **a.**  **Any and all documentation, including but not limited to, studies, statistics, and research conducted by your organization or on behalf of the Epilepsy Foundation of America that indicates the number of epileptic seizures that occur yearly in the City of Hialeah.**

    **b.**  **Any and all communications between Plaintiff, Pedro Santiago aka Pedro Santana aka Pedro Santiago Santana aka Pedro Santana Santiago, and/or his representative(s) or lawyer(s) and the Epilepsy Foundation of America, Inc. regarding the subject lawsuit.**

    **c.**  **Any and all communications between Plaintiff, Pedro Santiago aka Pedro Santana aka Pedro Santiago Santana aka Pedro Santana Santiago, and/or his representative(s) or lawyer(s) and the Epilepsy Foundation of America, Inc. regarding Miami-Dade Criminal Case No.** ▆▆▆▆▆▆

    **d.**  **Any and all documents evidencing payment of attorney's fees by the Epilepsy Foundation of America to Gonzalo Dorta, P.A., the Law Offices of Roberto Pertierra, P.A. or any other attorney representing  Plaintiff, Pedro**

**Subpoena Duces Tecum**
**Without Deposition**

Santiago aka Pedro Santana aka Pedro Santiago Santana aka Pedro
Santana Santiago.

e. Any form agreements for representing individuals with epilepsy or other
neurological dysfunctions in lawsuits against federal, state, county or
municipal governments.

f. Any and all documents [i.e. written studies, reports, research, summaries,
articles] on epileptics' interaction with police in the possession of the
Epilepsy Foundation of America.

g. List of the names of any and all doctors that the Epilepsy Foundation has
referred to Plaintiff attorneys suing state, county, federal or municipal
governments on behalf of a Plaintiff suffering from epilepsy.

h. All documentation in your possession evidencing that any given body
movement that occurs by an individual at some point during an encounter
with police is an epileptic seizure and can be determine to be involuntary
and beyond the control of the individual.

i. Any documentation that would determine at what point in the moments
preceding, including and subsequent to an epileptic seizure, a police officer
encountering an epileptic should be able to distinguish voluntary from
involuntary movements.

j. Any and all resources, documents, training manuals, videos and/or
photographs disseminated to law enforcement agencies by the Epilepsy
Foundation to educate law enforcement officers on how to differentiate an
individual suffering from an epileptic seizure from a violent subject not
obeying the commands of an officer and resisting arrest with violence.

k. Any and all documentation pertaining to communications from the
Epilepsy Foundation or persons acting on its behalf to the City of Hialeah
and/or its police department that alert or substantiate the existence of an
alleged problem in the manner in which Hialeah Police Officers respond to
epileptics.

l. Any and all documentation pertaining to communications from City of
Hialeah and/or its police department to the Epilepsy Foundation or persons
acting on its behalf seeking information on the Foundation's
recommendations regarding the appropriate manner in which police
officers should be encouraged to respond to epileptics.

If the costs of preparation and reproduction exceed One Hundred ($100.00) Dollars
you must contact the City Attorney's Office before forwarding the requested documents. If
not, the City Attorney's Office may not satisfy the full amount requested.

---

## ASSURANCE OF NOTIFICATION REQURED BY HIPPAA SECTION 164.512

1. The subpoenaing party made a good faith attempt to provide written notice to the
plaintiff.
2. The Notice was sufficient to permit the individual to object.
3. The time for the individual to object expired.
4. No objection were filed or all objections were resolved in favor of disclosure, in
compliance with 45 C.F.R. Sec. 164.512 (e)(1).

**Subpoena Duces Tecum**
**Without Deposition**

These items will be inspected and may be copied at that time. You will not be required to surrender the original items. You may comply with this subpoena by providing legible copies of the items to be produced to the attorney whose name appears on this subpoena on or before the scheduled date of production. You may condition the preparation of the copies upon the payment in advance of the reasonable cost of preparation. You may mail or deliver the copies to the attorney whose name appears on this subpoena and thereby eliminate your appearance at the time and place specified above. You have the right to object to the production pursuant to this subpoena at any time before the production by giving written notice to the attorney whose name appears on the subpoena.

If you fail to:

1. appear as specified;
2. furnish the records instead of appearing as provided above; or
3. object to this subpoena,

you may be in contempt of Court. You are subpoenaed by the attorney whose name appears on this subpoena. Unless excused from this subpoena by that attorney or the Court, you must respond to this subpoena as directed.

IN WITNESS, I sign and affix the seal of the Court on this **24th** day of **May, 2010.**

Respectfully submitted,
City of Hialeah
501 Palm Avenue, Fourth Floor
Hialeah, FL 33010
Telephone: (305) 883-5930

By: Alan E. Krueger, Asst. City Attorney
FBN 151680

3

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

PEDRO SANTIAGO,                          GENERAL JURISDICTION DIVISION

      Plaintiff,                          CASE NO. 10-24746 CA 08

vs.

THE CITY OF HIALEAH, a Political
Subdivision of the State of Florida,

      Defendants.

_____/

## DEFENDANT, CITY OF HIALEAH, NOTICE OF
## PRODUCTION FROM NON-PARTY

YOU ARE HEREBY NOTIFIED that after ten (10) days from the date of service of this

Notice, the undersigned will apply to the Clerk of this Court for issuance of the attached

subpoena(s) directed to:

      **a.**    **MRC/ Hialeah Hospital**

who are not parties, to produce the items listed at the time and place specified in the subpoena.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been
furnished by facsimile and U.S. Regular Mail this **28th** day of **May, 2010** to: **GONZALO R.
DORTA, ESQUIRE,** Gonzalo R. Dorta, P.A., 334 Minorca Avenue, Coral Gables, FL 33134.

                Alan E. Krueger
                Assistant City Attorney
                501 Palm Avenue – Fourth Floor
                Hialeah, Florida  33010
                Telephone:  (305) 883-5853
                Fax:       (305) 883-5896

                By:
                    Alan E. Krueger
                    FBN 151680

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 10-24746 CA 08

PEDRO SANTIAGO,

     Plaintiff,

vs.

THE CITY OF HIALEAH, a Political
Subdivision of the State of Florida,

     Defendant.

_____/

**SUBPOENA *DUCES TECUM***
**FOR PRODUCTION WITHOUT**
**DEPOSITION**

THE STATE OF FLORIDA

**TO:**   **Medical Records Custodian**
     **HIALEAH HOSPITAL**
     **651 East 25 Street**
     **Hialeah, FL 33013**

**(NO APPEARANCE NECESSARY IF RECORDS ARE MAILED IN.)**

YOU ARE COMMANDED to appear at the office of the City Attorney, City of Hialeah, at 501 Palm Avenue, Fourth Floor, Hialeah, Florida 33010, on **Monday, June 28, 2010, at 10:00 a.m.**, and to have with you (or mail in) at that time and place the following:

> **Any and all medical records, including but not limited to, charts, notes memoranda, correspondence, reports, summaries, evaluations, laboratory test results, x-ray and test results, MRI, CT scans, films, and all other documents pertaining to treatment, examination and/or hospitalization for services rendered to and all billing records re: PATIENT: PEDRO SANTIAGO aka PEDRO SANTANA aka PEDRO SANTIAGO SANTANA aka PEDRO SANTANA SANTIAGO; S.S.N.:** ▮▮▮▮▮ **D/O/B:** ▮▮▮▮▮▮

> **PLEASE NOTE THAT WE ARE REQUESTING MEDICAL RECORDS FOR ALL DATES OF TREATMENT, INCLUDING BUT NOT LIMITED TO, THE ADMISSIONS OF FEBRUARY 9, 2008 AND APRIL 19, 2008.**

This Subpoena requires production of your complete file contents. You are to produce each and every piece of paper contained in your file regarding the above patient, whether or not prepared by you. This further includes telephone messages, letters from attorneys, letters from the above

**Subpoena Duces Tecum**
**Without Deposition**

individual, or from any other source. You are not permitted to edit or delete items. Failure to comply fully may result in court sanctions.

**If the costs of preparation and reproduction exceed One Hundred ($100.00) Dollars you must contact the City Attorney's Office before forwarding the requested documents. If not, the City Attorney's Office may not satisfy the full amount requested.**

---

**ASSURANCE OF NOTIFICATION REQURED BY HIPPAA SECTION 164.512**

1. **The subpoenaing party made a good faith attempt to provide written notice to the plaintiff.**
2. **The Notice was sufficient to permit the individual to object.**
3. **The time for the individual to object expired.**
4. **No objection were filed or all objections were resolved in favor of disclosure, in compliance with 45 C.F.R. Sec. 164.512 (e)(1).**

---

These items will be inspected and may be copied at that time. You will not be required to surrender the original items. You may comply with this subpoena by providing legible copies of the items to be produced to the attorney whose name appears on this subpoena on or before the scheduled date of production. You may condition the preparation of the copies upon the payment in advance of the reasonable cost of preparation. You may mail or deliver the copies to the attorney whose name appears on this subpoena and thereby eliminate your appearance at the time and place specified above. You have the right to object to the production pursuant to this subpoena at any time before the production by giving written notice to the attorney whose name appears on the subpoena.

If you fail to:

1.  appear as specified;
2.  furnish the records instead of appearing as provided above; or
3.  object to this subpoena,

you may be in contempt of Court. You are subpoenaed by the attorney whose name appears on this subpoena. Unless excused from this subpoena by that attorney or the Court, you must respond to this subpoena as directed.

**Subpoena Duces Tecum**
**Without Deposition**

IN WITNESS, I sign and affix the seal of the Court on this **5th** day of **June, 2010**.

> Respectfully submitted,
> William M. Grodnick
> City Attorney - City of Hialeah
> 501 Palm Avenue, Fourth Floor
> Hialeah, FL 33010
> Telephone: (305) 883-5930

> _____
> By:   Alan E. Krueger, Asst. City Attorney
>        FBN 151680

3

IN THE ELEVENTH JUDICIAL CIRCUIT OF FLORIDA
IN AND FOR MIAMI-DADE COUNTY

PEDRO SANTIAGO,                                :    **GENERAL JURISDICTION DIVISION**

                                           :  **CASE NO. 10-24746 CA 08**

                **Plaintiff,**     :  **JUDGE GISELA CARDONNE**

                                           :

**vs.**                                   :

                                         :  **CITY OF HIALEAH'S**

**CITY OF HIALEAH, A Political**   :  **ANSWER & DEFENSES**

**Subdivision of the State of Florida,**  :  **TO COMPLAINT**

                                         :  **JOINING COUNTERCLAIM**

               **Defendant.**   :  **FOR DECLARATORY JUDGMENT**

                                         :

**ANSWER**

~~THE ORIGINAL FILED~~
~~ON MAY 28 2010~~
~~IN THE OFFICE OF~~
~~CIRCUIT COURT MIAMI DADE CO FL~~

Defendant, **CITY OF HIALEAH**, by and through the undersigned counsel, answers and

defends against the complaint filed in this cause as follows:

## AS TO GENERAL ALLEGATIONS

1. **Admitted** that the claim arises from an incident in which one or more officers of the

Hialeah Police Department used force in the course of their response. **Denied** as to all other

allegations and adverse inferences.

2. **Admitted** for jurisdictional purposes only. **Denied** as to entitlement to any damages from

the municipal defendant.

3. **Admitted** for jurisdictional purposes only. **Denied** as to the merits of the claims asserted.

4. **Admitted** that a copy of Exhibit "A," purporting to be a presuit notice of claim dated June

16, 2009, from Gonzalo R. Dorta, P.A., on behalf of Pedro Santiago Santana, with the unredacted date

of birth and Social Security Number shown, and referencing a date of incident of September 28, 2007,

a Hialeah Police Report No. 07-39476, and a State [Criminal] Case [No.] 132007CF0340460001XX,

was served by mail on and received by the City of Hialeah. **Denied** that all conditions precedent to

the filing of state tort claims asserted in this Complaint have been satisfied or that the State of Florida has waived sovereign immunity on behalf of municipal corporations for all claims asserted in this complaint. **Denied** that the Florida Department of Financial Services or Chief of Police Mark Overton is an appropriate agency and/or entity as alleged for service of a presuit notice of claim on the City of Hialeah under presuit statutory requirements of the State of Florida. Because the further allegations expressed in the exhibit are lengthy and unnumbered, each sentence following the greeting, "Dear "Gentlemen," and preceding the last sentence, "Please govern yourselves accordingly," will be referred to by consecutive number from **22.1 through 22.62** and the City's response to those specific allegations is set forth in paragraph **22** below and repeated and realleged herein.[1] **Denied** as to all other allegations and adverse inferences.

## AS TO IDENTIFICATION OF PARTIES

5. **Admitted**.

6. **Admitted** that the City of Hialeah is a municipal corporation under the laws of the State of Florida which, for purposes of section 768.28, Florida Statutes, is included within the term "state agencies or subdivisions," when used in that statute. Admitted that the City of Hialeah employed Officers Jordana, Janvier, and Gutierrez and that they used force in arresting Plaintiff on September 28, 2007. Denied as to all other allegations and adverse inferences.

## AS TO FACTS GIVING RISE TO CAUSE OF ACTION

7. Defendant, City of Hialeah, **repeats and realleges** each and every response contained in

---

[1]A copy of the text of Exhibit "A" of the Complaint, with consecutive numbering added in brackets, is attached and identified as "Sequentially Numbered Allegations As Set Forth in Ex. 'A' Incorporated by Reference in paragraph 4 of the Complaint," solely for the purpose of numbering the allegations to facilitate making the appropriate response in this Answer to a numbered, rather than to an unnumbered allegation and not for the purpose of re-alleging the allegations themselves.

the individual respective responses **1 through 6** above as if fully set forth herein.

8. **Admitted** that at approximately **4:30 p.m.**, on September 28, 2007, Plaintiff was in the vicinity of 2899 West Second Avenue, Hialeah, Florida. Admitted that beginning at approximately **4:36 p.m.** and prior to the arrival of police or fire rescue, Plaintiff was lying on the ground in the outside lane of the roadway at that location, that unidentified persons were attempting to assist him to his feet and to get him off the street, and that within approximately four minutes he was standing up on the sidewalk. Denied that Plaintiff was exhibiting convulsions, that he lost control over his bodily movements, that he shook uncontrollably, or that he jerked and moved his arms and legs while on the ground. On information and belief based on the clothing he was wearing, Plaintiff may have been going to or coming from work. Without knowledge as to whether Plaintiff had finished work for the day, that he was walking to a bus stop, or that he had an epileptic seizure. Denied as to all other allegations and adverse inferences.

9. **Admitted** that Hialeah Police Officers were dispatched to the scene at approximately **4:39 p.m.**

10. **Admitted** that when the first officer arrived at the scene **prior to 4:41 p.m.**, that he encountered Plaintiff. **Denied** as to all other allegations and adverse inferences.

11. **Admitted** that when the first officer encountered him, Plaintiff refused to answer questions that would assist that officer in determining what happened and why he was reported to be lying down in the street, that although Plaintiff was able to verbalize responsive answers to questions, he declined to respond to the officer's questions and denied intoxication from drugs or alcohol or suffering from any mental ailment or condition. **Admitted** that although Plaintiff kept reaching into his fanny pack, and looking away when questioned, giving the first officer concern for his safety,

3

**denied** that Plaintiff was erratic in his behavior toward officers that arrived on the scene. **Denied** that the body movements initially exhibited by Plaintiff to the first officer, beginning with moving back and elbowing the officer, striking the officer, and pushing him to the ground, were involuntary rather than purposeful and intentional. **Admitted** that Plaintiff was non-compliant with officer commands to submit to authority and to cease his aggression. **Admitted** that each of three officers that arrived on the scene and personally observed and interacted with Plaintiff prior to approximately **4:44 p.m.**, characterized Plaintiff's behavior as violent resistence and refusal to comply with lawful commands. **Denied** as to all other allegations and adverse inferences.

12. **Admitted** that the first two officers on the scene resorted to the use of non-lethal taser force to attempt to overcome Plaintiff's ongoing aggression and non-compliant behavior and that their attempts had little or no effect in controlling Plaintiff's behavior. **Admitted** that subsequently, a third officer arrived on the scene and resorted to the use of non-lethal taser force to attempt to overcome Plaintiff's ongoing aggression and non-compliant behavior and that a single cycle of his taser momentarily incapacitated Plaintiff which allowed the first two officers successfully to handcuff Plaintiff and bring his aggressive conduct under control. **Denied** as to all other allegations and adverse inferences.

14. **Denied**.

15. **Admitted** that, after being knocked to the ground by Plaintiff who continued to be combative and standing with fist cocked, prepared to punch the officer while the officer was still on the ground, Officer Jordana, the first officer to arrive on the scene, kicked Plaintiff in the knee to prevent Plaintiff from punching him. **Admitted** that Officer Jordana and Officer Janvier, the second officer on the scene, participated in securing and handcuffing Plaintiff. **Admitted** that Officer Janvier

4

struck Plaintiff in an attempt to knock him off Officer Jordana while Plaintiff held a physical advantage over the officer. **Denied** as to all other allegations and adverse inferences.

16. **Admitted** that three officers deployed a non-lethal battery-operated electronic control device (taser) but that only the taser deployed by Officer Gutierez, the third officer to arrive on the scene, had the desired and intended consequence of incapacitating Plaintiff for sufficient time to enable the first two officers successfully to handcuff Plaintiff and bring his aggressive conduct under control. **Denied** as to all other allegations and adverse inferences.

17. **Admitted** that Plaintiff was charged with disorderly conduct, battery on a law enforcement officer, resisting/obstructing with violence, resisting/obstructing without violence, and criminal mischief/vandalism based on the actions he took in violation of state law. **Without knowledge** as to the cause of any actions or conduct exhibited by Plaintiff prior to the arrival of the first police officer. **Denied** as to all other allegations and adverse inferences.

18. **Denied**.

19. **Admitted** that each of the three officers who responded to the scene and observed and interacted with Plaintiff as described in the preceding paragraphs was an employee of the City acting in the course and scope of his duties as a law enforcement officer and responded to Plaintiff's non-compliant, combative, and aggressive behavior with the reasonable force appropriate to defend themselves and each other, to overcome Plaintiff's aggression, and to take Plaintiff into police custody. **Denied** as to all other allegations and adverse inferences.

20. **Admitted** that each of the three officers who responded to the scene and observed and interacted with Plaintiff as described in the preceding paragraphs was an employee of the City. **Admitted** that none of the three officers who responded to the scene observed Plaintiff exhibit

5

behavior that could reasonably be characterized as "uncontrollable and involuntary jerking," or any other behaviors that could reasonably be construed as "signs of a seizure" or of a "need for immediate medical attention," or as anything other than synonymous with "combative," "non-compliant," and "non-responsive." **Denied** as to all other allegations and adverse inferences.

21. **Admitted** that each of the three officers who responded to the scene and observed and interacted with Plaintiff as described in the preceding paragraphs used reasonable force authorized by law in the performance of lawful duties, including investigating public calls for police assistance within the scope of law enforcement and public caretaking duties, defending themselves and each other from Plaintiff's aggression, and effecting Plaintiff's arrest. **Denied** as to all other allegations and adverse inferences.

**AS TO COUNT I**
**NEGLIGENT TRAINING [&**
**§ 1983 CLAIM FOR INADEQUATE TRAINING & SUPERVISION]**

22. Defendant, City of Hialeah, **repeats and realleges** each and every response contained in the individual respective responses **1 through 21** above as if fully set forth herein. Further, to the extent that Count I purports to allege a state tort claim for negligent training, Defendant moves separately to dismiss pursuant to Rule 1.140(b)(6) and to strike pursuant to Rule 1.40(f), Fla.R.Civ.P. Further, Defendant responds to the federal claim set forth in Ex. "A" which is incorporated by reference by repeating and realleging paragraph 4 of the Complaint in paragraph 22 as follows:

22.1. **Admitted** that Pedro Santiago Santana was arrested on September 28, 2007, by officers of the Hialeah Police Department, including Officers [Ernesto] Gutierrez, Badge #1202, [Damian] Jordana, Badge #1598, and [Fritz] Janvier, Badge #1620, and that force was used against him by these officers in the course of performing their lawful duties. **Admitted** that Gonzalo R.

Dorta, P.A. purports to represent Plaintiff in connection with the claims they allege arise from the circumstances of the police encounter and arrest. **Denied** as to all other allegations and adverse inferences.

22.2. **Admitted** that on September 28, 2007, the officers tased Mr. Santana several times in an attempt to control him. Denied as to all other allegations and adverse inferences.

22.3. **Denied** that either the incident which brought officers to the scene nor the officers' initial contact with Plaintiff occurred when Mr. Santana collapsed to the ground and was unable to respond to officers' commands. **Without knowledge** as to whether and to what extent Mr. Santana suffers from pre-existing neurological dysfunction or that he suffered an epileptic seizure at any given points in time during the subject incident or that his behavior was wholly or partially the result of involuntary movements occasioned by an epileptic seizure.

22.4. **Without knowledge** as to whether Mr. Santana was having or continued to have an epileptic seizure at the time officers first arrived on the scene.

22.5. **Denied** that officer attempted to subdue Plaintiff by lifting him up from the ground by use of excessive force to hold him and unnecessarily deploying tasers "to control him down." **Admitted** that at several points in time in the course of Plaintiff's aggressive assault and battery on two law enforcement officers, each of three police officers deployed a taser electronic control device in an attempt to control Plaintiff without resort to more violent or physical means of control and that because two of the devices did not have sufficient incapacitating effect to prevent Plaintiff's continued and ongoing physical aggression and resistance, and because one or more of the officers had to resort to additional physical force, including more than one cycle of the electronic control device, to overcome Plaintiff's physical aggression and non-compliant behavior.

7

22.6. **Admitted**, as an abstract principle, that use of excessive force can be actionable under Section 1983 of the Federal Civil Rights Statute. **Admitted**, as an abstract principle, that the use of clearly excessive force can be actionable under state common law. **Admitted**, as an abstract principle, that under state tort law, but not federal civil rights statutes, a municipality can be vicariously liable for the negligence or use of clearly excessive force by police officers it employs under the appropriate facts and circumstances. **Denied** that the actual provable facts and circumstances of this case or the provable allegations of the complaint present an appropriate case for a violation of federal civil rights, use of clearly excessive force, or vicarious liability against the City of Hialeah.

22.7. **Admitted** but only to the extent that the City has otherwise admitted to the actions of officers it employed in this Answer.

22.8. **Denied**.

22.9. **Denied**.

22.10. **Admitted** that the occurrence of an epileptic seizure can negate the ability of a person to control body movements depending upon the nature and severity of the seizure. **Denied** as to all other allegations and inferences.

22.11. **Admitted** that the assertion is a tautology and that by definition involuntary movements of one's arms are not subject to one's control. **Denied** that Plaintiff's actions in ignoring lawful police commands, resisting or obstructing uniformed law enforcement officers in the performance of their duties, and threatening and using physical aggression against them were the result of involuntary movements which were beyond Plaintiff's control.

22.12. **Admitted** that officers attributed some of Plaintiff's body movements to

8

volitional acts of resisting arrest with violence. **Denied** that officers were mistaken or unreasonable in their inferences about the volitional nature of Plaintiff's actions.

22.13. Denied that Plaintiff was experiencing visual and cognitive distortion of perception or beginning to hallucinate or that he was experiencing an epileptic sequence in the course of his interaction with police officers. **Without knowledge** or certainty as to whether and to what extent, if any, Plaintiff experienced visual or cognitive distortion of perception, hallucinations, or an epileptic sequence prior to the arrival of police.

22.14. **Admitted** that a person experiencing an epileptic seizure may experience involuntary body movements, including involuntary arm movements, as well as visual and cognitive distortion of perception and hallucinations. **Denied** that Plaintiff was experiencing an epileptic seizure, involuntary body movements, including involuntary arm movements, as well as visual and cognitive distortion of perception and hallucinations, during his interaction with police.

22.15. **Admitted** that Plaintiff had been under treatment for an epileptic condition since October, 2004, but **denied** that an epileptic condition caused him to use force and violence to obstruct or interfere with police officers in the performance of their duties, to resist arrest, or to assault and batter law enforcement officers.

22.16. **Admitted** that Plaintiff was combative and non-compliant with officers' lawful commands. **Denied** as to all other allegations and adverse inferences.

22.17. **Denied**.

22.18. **Denied**.

22.19. **Admitted** that the police officers construed Plaintiff's body movements and combative actions as resisting arrest. **Denied** as to all other allegations and adverse inferences.

9

22.20. **Admitted** that the officers tasered Plaintiff several times in response to his ongoing and continuing body movements, combative actions, and resistence to arrest. **Denied** as to all other allegations and adverse inferences.

22.21. Admitted that it required more than one officer to subdue Plaintiff with the use of reasonable and necessary force. **Denied** as to all other allegations and adverse inferences.

22.22. Admitted that Plaintiff was arrested and treated for minor injuries incurred in using force and violence against police officers and being struck by one set of taser prongs discharged from a single taser cartridge by each of the officers involved in attempting temporarily to incapacitate him to effect a lawful arrest in a manner that minimized the risk of permanent or serious injury to Plaintiff or the officers. **Denied** as to all other allegations and adverse inferences.

22.23. **Admitted** only to the extent that Plaintiff's injuries arose from the reasonable use of force by law enforcement officers in response to Plaintiff's use of force and violence in resisting and obstructing police, committing battery against a law enforcement officer and from his own actions. **Denied** as to all other allegations and adverse inferences.

22.24. **Denied**.

22.25. **Admitted** that it is foreseeable only to the extent that it is possible that law enforcement officers could encounter a subject who might manifest involuntary body movements attributable to a physical, neurological or medical condition in the course of performing their lawful duties. **Denied** as to all other allegations and adverse inferences.

22.26. **Admitted**.

22.27. **Admitted** only to the extent that obstructing traffic is not punishable as a serious criminal offense. **Denied** that obstructing traffic cannot have serious consequences, including

10

safety concerns, for law enforcement authorities, the traffic which is obstructed or the person who is the cause of the obstruction. **Denied** as to all other allegations and adverse inferences.

22.28. **Denied**.

22.29. **Without knowledge** as to whether and the extent to which Plaintiff was in need of help prior to the arrival of police. **Admitted** that police received 911 reports of Plaintiff's obstruction of traffic that caused the City to dispatch police officers and fire rescue paramedics to the scene for the purpose of investigating, *inter alia*, whether Plaintiff was in need of help and, if necessary, providing emergency medical assistance. **Denied** as to all other allegations and adverse inferences.

22.30. Admitted only to the extent that reasonable force was used to subdue Plaintiff. **Denied** as to all other allegations and adverse inferences.

22.31. Admitted only to the extent that the training and supervision of police officers is a discretionary policy-making governmental function under state law for which any duty is a public duty immune from suit under the doctrine of sovereign immunity. **Denied** as to all other allegations and adverse inferences.

22.32. **Admitted** only to the extent that, as an abstract principle, inadequate training or supervision of police through a municipal policy of deliberate indifference to the constitutional and civil rights of persons likely to be encountered by police in the performance of their duties, can result in imposition of liability for violation of federal civil rights if it is the moving force behind a violation which results in injury to a particular person under 28 U.S.C. section 1983. **Denied** as to all other allegations and adverse inferences.

22.33. **Denied**.

11

22.34. **Admitted** that the Hialeah Police Department received 911 calls indicating that Plaintiff was walking or lying in the roadway hindering the flow of traffic. **Without knowledge** as to whether and the extent to which his behavior was the result of a seizure episode or whether it was uncharacteristic for Plaintiff to be walking in the roadway hindering the flow of traffic. **Denied** as to all other allegations and adverse inferences.

22.35. Assuming that reference is made to the point in time after the first officer arrived on the scene to investigate the obstruction of traffic and Plaintiff's need, if any, for assistance, when Plaintiff became combative and non-compliant, knocked an officer down, and grappled with him and a second officer on the ground, **admitted** that Plaintiff was tasered by Hialeah Police Officers and that after he was incapacitated, handcuffed and under control he was assisted to his feet by one or more officers. **Denied** as to all other allegations and adverse inferences.

22.36. **Denied**.

22.37. Assuming that reference is made to the point in time after the first officer arrived on the scene to investigate the obstruction of traffic and Plaintiff's need, if any, for assistance, when Plaintiff became combative and non-compliant, knocked an officer down, and grappled with him and a second officer on the ground, **denied**. **Without knowledge** as to a point in time prior to the arrival of the first responding police officer, but **denied** on information and belief to the extent that 911 calls to the police did not describe a person who was not in control of his bodily movements or exhibiting behavior akin to one undergoing some neurological or medical-related episode other than the possibility of having been struck by a car. **Denied** as to all other allegations and adverse inferences.

22.38. Assuming that reference is made to the point in time after the first officer

12

arrived on the scene to investigate the obstruction of traffic and Plaintiff's need, if any, for assistance, including both before and after Plaintiff became combative and non-compliant, knocked an officer down, and grappled with him and a second officer on the ground, **denied** that Plaintiff was unable to respond to verbal commands. **Without knowledge** whether or not Plaintiff was unable to respond to verbal commands at any point in time prior to the arrival of the first responding police officer, but **admitted** on information and belief to the extent that 911 calls to the police described a person who may have been struck by a car. **Denied** as to all other allegations and adverse inferences.

22.39. **Admitted** that under some, but not all, circumstances, deployment of a non-lethal electronic control device to incapacitate, restrain or control a combative and non-compliant subject whose aggressive behavior might manifestly be due to physical, cognitive or mental illness could be inappropriate. **Denied** as to all other allegations and adverse inferences.

22.40. **Admitted** that it is foreseeable only to the extent that it is possible that law enforcement officers could encounter a combative and non-compliant subject whose aggressive behavior might manifestly be due to physical, cognitive or mental illness in the course of performing their lawful duties. **Denied** as to all other allegations and adverse inferences.

22.41. **Admitted** to the extent that *Russo v. City of Cincinnati*, 953 F.2d 1036 (6th Cir. 1992) included a claim of municipal liability for inadequate training brought under 42 U.S.C. § 1983 which requires proof that the training is, in fact, inadequate, that the inadequacy results from the municipality's deliberate indifference, and that the deliberate indifference is the moving force that causes the constitutional violation complained of (e.g., excessive force). Further **admitted** to the extent that the entire panel in *Russo v. City of Cincinnati*, found that the taser was designed to be used and it was objectively reasonable to use it in the type of circumstance presented by a potentially

13

homicidal and suicidal paranoid schizophrenic who posed no immediate threat lying at the bottom of a stairwell to stun and to disable temporarily in order to take him into custody rather than to inflict more serious or more permanent injury. Further **admitted** that in *Russo v. City of Cincinnati*, two members of a three-judge panel held that a genuine issue of material fact existed as to whether training offered by the city to police officers on use of deadly force amounted to a failure to train in deliberate indifference to people's rights under the facts and circumstances of that case where police officers fatally shot a paranoid schizophrenic. Further **admitted** that the dissent in *Russo v. City of Cincinnati*, expresses the law of the Eleventh Circuit that in determining whether a training program is adequate, the focus must be on the program itself, not on whether a particular officer was adequately trained. **Denied** as to all other allegations and adverse inferences including any inference that the allegation otherwise accurately states a principle of law or that *Russo v. City of Cincinnati* supports it other than to the extent admitted herein.

22.42. **Denied**.

22.43. **Denied**.

22.44. **Admitted** that in the course of performing his lawful duties a police officer can reasonably expect to confront a situation involving a combative and non-compliant subject and further that it is possible that such a subject has a medical or mental impairment. **Denied** as to all other allegations and adverse inferences including the inference that *Brown v. Gray*, 227 F.3d 1278 (10th Cir. 2000) involved such a situation.

22.45. **Denied** that the City showed a deliberate indifference to the constitutional and civil rights of those suffering from mental or physical infirmities who because of that impairment are unable to understand or respond to orders and cannot control their action and any inference that any

14

allegation in paragraphs **22.1 - 22.44** above supports any inference or conclusion to that effect.

22.46. **Denied** that officers lacked sufficient training to deal with situations of combative and non-compliant subjects they may routinely encounter, including any that may be suffering from mental or physical conditions, that fall within the scope of their lawful duties. **Denied** as to all other allegations and adverse inferences.

22.47. **Admitted** on information and belief as set forth in paragraphs **22.1 - 22.46** above that Plaintiff may have needed an assessment of his medical condition and may have needed medical treatment at the time police first encountered him, but his combative and non-compliant behavior prevented police and paramedics from assessing his status and medical needs until his aggressive conduct was brought under control. **Admitted** that officers were required to and did respond to Plaintiff's combative and non-compliant behavior, and used reasonable force under the circumstances, including electronic control devices (tasers) to incapacitate, restrain or control him, to stun and to disable temporarily rather than to inflict more serious or more permanent injury in order to provide the conditions that would allow paramedics safely to assess his medical condition after minimizing the risk of harm that Plaintiff's combative and non-compliant behavior presented to himself and others, including the emergency rescue crew. **Denied** as to all other allegations and adverse inferences.

22.48. **Admitted** that officers deployed three battery-operated electronic control devices (tasers) in an attempt temporarily to stun and incapacitate Plaintiff, two of which were cycled more than one time each, but that only the single cycle by the third device had a significant and intended effect on Plaintiff's combative and non-compliant behavior sufficient to allowed officers to take him into police custody and control. **Denied** as to all other allegations and adverse inferences.

22.49. **Admitted** that, as an abstract principle, a municipality could be liable under section 1983 for use of excessive force by its employees that violate a person's constitutional rights where a municipal policy is the moving force behind the violation. **Denied** that a municipality would be vicariously liable under section 1983 for use of excessive force that violated a person's constitutional rights under a theory of *respondeat superior* simply because the municipality employed the person who engaged in the constitutional transgression. **Denied** as to all other allegations and adverse inferences including any inference that the conduct of a Hialeah Police Officer, to the extent admitted in paragraphs **22.1 - 22.49** above violated Plaintiff's constitutional rights or that a municipal policy was the moving force that caused it.

22.50. **Admitted** that, as an abstract principle, within the limitations of section 768.28, Florida Statutes, a municipality can be vicariously liable under state tort law for a use of force by a police officer it employs that is clearly excessive, but not for a failure to use force, under some circumstances. **Denied** that any officer employed by the City used clearly excessive force in confronting Plaintiff or that the circumstances admitted in paragraphs **22.1 - 22.49** above present the circumstances under which vicarious liability would be applicable under state tort law. **Denied** as to all other allegations and adverse inferences.

22.51. **Denied** that Plaintiff was undergoing an epileptic episode at the time police responded with force to his combative and non-compliant behavior. **Denied** that officers used excessive or clearly excessive force. **Denied** that officers were unreasonably aggressive in their attempt to control Plaintiff's combative and non-compliant behavior. **Denied** as to all other allegations and adverse inferences.

22.52. **Denied**, as a matter of law, that the use of force by police admitted in

16

paragraphs **22.1 - 22.51** above constitutes negligence. **Denied**, as a matter of law, that under the circumstances admitted in paragraphs **22.1 - 22.51** police had a duty to provide necessary medical care to Plaintiff that would give rise to a viable claim for negligence. **Admitted** that police had a duty to summon emergency medical assistance to the scene under the circumstances admitted in paragraphs **22.1 - 22.51**, that fire rescue paramedics were promptly summoned and present at the scene, and that the police satisfied their legal duty. **Denied** as to all other allegations and adverse inferences.

22.53. **Admitted** that, as an abstract principle, within the limitations of section 768.28, Florida Statutes, and qualified immunity, a police officer could incur personal liability for a use of excessive force under some circumstances. **Denied** that individual officers have personal liability for the use of force under the circumstances admitted in paragraphs **22.1 - 22.52** above. **Denied** as to all other allegations and adverse inferences.

22.54. **Denied** that any officer deployed deadly force. **Denied** that any officer committed an assault or battery by using force he was privileged under the circumstances to use. **Admitted** that prior to temporarily neutralizing Plaintiff's aggression by the effective deployment of a battery-operated electronic control device (taser), police officers had to resort to physical force to defend themselves and each other from Plaintiff's combative and non-compliant behavior. Further admitted that during the brief (five second) period of Plaintiff's temporary incapacitation by the effective deployment of a battery-operated electronic control device (taser), police officers had to resort to physical force to handcuff Plaintiff. **Denied** that battery-operated electronic control devices (tasers) were deployed in a manner, for a duration, or otherwise to exceed the reasonably necessary and safe level to effect a temporary incapacitation of Plaintiff's combative and non-compliant

behavior so as to permit police to take him into custody with less risk of injury to themselves and Plaintiff than would have ensued if the devices had not been so deployed. **Denied** as to all other allegations and adverse inferences.

22.55. **Admitted** that Plaintiff has asserted theories of liability under 28 U.S.C § 1983 and state tort law based on allegations of excessive force and negligence to which the foregoing responses in paragraphs **22.1 - 22.54** above were addressed, but **denied** that the claims are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law, and **denied** that the factual contentions have evidentiary support. **Denied** as to all other allegations and adverse inferences.

22.56. **Admitted**.

22.57. **Admitted** that Plaintiff and his lawyers submit that the prosecutor's decision arose from clear and irrefutable evidence that Plaintiff's actions were caused by an epileptic episode and not because he intended to resist arrest or disobey the orders of the officers at the scene. **Denied** that the prosecutor's decision did, in fact, arise from clear or irrefutable evidence that Plaintiff's actions were caused by an epileptic episode and not because he intended to resist arrest or disobey the orders of the officers at the scene. **Denied** that Plaintiff's combative and non-compliant actions were caused by an epileptic episode, which, in fact, they were not. **Denied** that Plaintiff's combative and non-compliant actions were not, in fact, a manifestation of his intent to resist arrest and disobey the lawful commands of the officers at the scene, which, in fact, they were. **Denied** as to any inference that even if, *arguendo*, Plaintiff's combative and non-compliant actions were, in fact, caused by an epileptic episode and not because he intended to resist arrest or disobey the orders of the officers at the scene, that such facts would vitiate probable cause for his arrest or render

18

unreasonable the force used to contain his aggression and place him in the lawful custody and control of the police. **Denied** as to all other allegations and adverse inferences.

22.58. **Denied** that any medical records were enclosed or attached with the presuit notice. **Denied** that any medical records were attached with the presuit notice to the Complaint. **Without knowledge** as to what those medical records would or would not have acquainted the Defendant or the Court if they had been enclosed or attached. **Denied** as to all other allegations and adverse inferences.

22.59. **Admitted** that the statement referenced in this sentence was asserted in the presuit notice. **Without knowledge** as to whether it was, in truth and fact, applicable to Plaintiff.

22.60. Admitted that the presuit notice letter served on the City asserts that Plaintiff will pursue theories of liability against the City of Hialeah under 28 U.S.C § 1983 and state tort law based on allegations of excessive force and negligence to which the foregoing responses in paragraphs **22.1 - 22.59** above were addressed. **Denied** as to all other allegations and adverse inferences.

22.61. **Admitted** that Plaintiff does not concede that the service of a presuit notice under state law is a condition precedent to filing a federal claim under 28 U.S.C. § 1983. **Admitted** that service of a presuit notice is not a condition precedent to filing a federal claim under 28 U.S.C. § 1983. Admitted that _Spooner v. Department of Corrections, State of Florida,_ 488 So.2d 897 (Fla 1st DCA 1986) and _Maggio v. Florida Department of Labor and Employment Security, etc.,_ 899 So.2d 1074 (Fla. 2005) support the propositions for which they are cited.

22.62. Based on the assertion set forth in paragraph **22.61** above, **admitted** that Plaintiff felt compelled to submit the presuit notice as to the common law grounds for suit under

state law notwithstanding that Plaintiff also intends to pursue civil statutory and constitutional remedies under federal law for which presuit notice is not required.

23. **Denied** under the public duty doctrine that the City had any such actionable duty.

24. **Denied** under the public duty doctrine that the City had any such actionable duty.

25. **Denied**.

26. **Denied**.

27. **Denied**.

WHEREFORE, having answered the allegations asserted in this count, Defendant demands strict proof of all allegations not expressly admitted herein. Further Defendant demands dismissal of the claims against it and judgment in its favor together with all costs of defense, including such attorneys fees, as may be recoverable by law.

## AS TO COUNT II
## VICARIOUS LIABILITY

28. Defendant, City of Hialeah, **repeats and realleges** each and every response contained in the individual respective responses **1 through 27** above as if fully set forth herein. Further, Defendant responds as follows:

29. **Admitted** as an abstract principle that a municipality can be vicariously responsible and liable for the negligence of its police officers under the appropriate facts and circumstances. **Denied** that the actual provable facts and circumstances of this case or the provable allegations of the complaint present an appropriate case for vicarious liability against the City of Hialeah.

30. **Admitted** that employees of the City have a duty, while acting within the course and scope of their duties, to act with reasonable care with respect to operational activities as to which the

20

State of Florida has waived sovereign immunity purusant to section 768.28, Florida Statutes and the case law. **Denied** as to all other allegations and inferences.

31. **Denied**.

32. **Denied**.

33. **Admitted** that each of the three officers who responded to the scene and observed and interacted with Plaintiff as described in the preceding paragraphs was an employee of the City acting within the course and scope of his employment. **Denied** as to all other allegations and adverse inferences.

34. **Admitted** that each of the three officers who responded to the scene and observed and interacted with and used force against Plaintiff as described in the preceding paragraphs was an employee of the City acting within the course and scope of his employment. **Denied** as to all other allegations and adverse inferences.

35. **Denied**.

WHEREFORE, having answered the allegations asserted in this count, Defendant demands strict proof of all allegations not expressly admitted herein. Further Defendant demands dismissal of the claims against it and judgment in its favor together with all costs of defense, including attorneys fees, as may be recoverable by law.

## DEFENSES

Defendant, City of Hialeah, by and through the undersigned counsel, asserts defenses to and against the complaint filed in this cause as follows:

### A. CORE FACTS

1. At approximately 4:36 p.m. on September 28, 2007, the Hialeah Police Department began

21

receiving a series of 911 calls describing an incident occurring in the roadway in the vicinity of 2899 West 2nd Avenue, Hialeah, Florida. The calls advised that a man tripped and fell in a traffic lane, was initially lying in the roadway in front of a vehicle that had stopped, obstructing traffic, that the driver or other occupant of the vehicle was attempting to help the man up, that at first the man did not get up, but eventually he stood up, appeared alert and uninjured, and was last reported standing on the sidewalk.

2. Marked patrol units of the Hialeah Police Department were dispatched to that location in emergency mode. Paramedics of the Hialeah Fire Rescue Department were also dispatched in emergency mode to that location. Police arrived first.

2.1. At approximately 4:43 p.m., Officer Jordana, the first responding officer to arrive, encountered Plaintiff, a white or mulatto male subject dressed in blue scrubs. Plaintiff was standing without any apparent injuries in the sidewalk-driveway area at 2899 West Second Avenue. Onlookers identified Plaintiff to the officer as the person who had been lying in the roadway obstructing traffic.

2.2. Officer Jordana attempted to question Plaintiff about the incident which had been dispatched as a code 2 emergency to conduct an investigation (2-14). He asked Plaintiff for his name, for his identification, whether he had been drinking, whether he suffered from mental illness, whether he used or abused drugs, and whether he needed emergency medical assistance. Plaintiff gave a negative response to some queries and no response to others leaving Plaintiff unidentified with no indication of what, if anything, had caused him to be lying in the street obstructing traffic.

2.3. Officer Jordana asked where Plaintiff was going and Plaintiff responded that he was going home. When asked where his home was, Plaintiff pointed to the East and said "over

22

there."

2.4. Plaintiff acted nervous. He looked away when asked a question. He kept reaching to a fanny pack at his waist and the officer could not see what was in it. His actions caused Officer Jordana to become apprehensive for his own safety, particularly about whether something posing a safety risk was in the fanny pack.

2.5. Officer Jordana asked Plaintiff to stand next to his patrol car and to place his hands on the front hood of the vehicle. Officer Jordana indicated where he wanted Plaintiff to stand by placing his left hand on the center of Plaintiff's back below the neck and guiding him toward the patrol car. Plaintiff stood next to the vehicle facing the right front wheel in front of the marked unit.

2.6. Plaintiff placed his hands on the hood, but almost immediately began to reach for the fanny pack at his waist with his right hand. Officer Jordana could sense Plaintiff tensing up. Officer Jordana ordered Plaintiff three or four times to keep his hands on the hood of the vehicle, but Plaintiff continued to reach for his fanny pack.

2.7. The last time Plaintiff reached for the fanny pack, Officer Jordana grasped Plaintiff by the wrist. But Plaintiff immediately jerked his hand out of the officer's grasp, rotated his body at the waist to the right, and with his right elbow extended backward, thrust his elbow into the officer's mid-section knocking the officer to the ground. Plaintiff then faced the officer, made a fist and moved forward to strike the officer while the officer was on the ground.

2.8. From the ground, Officer Jordana defended himself by kicking the Plaintiff in the area of the knee.

2.9. A physical struggle ensued on the ground between Officer Jordana and Plaintiff.

2.10. Paramedics arrived at approximately 4:43 p.m. and observed the Plaintiff

grappling with Officer Jordana. Paramedics were unable to try to assess or treat Plaintiff while he was combative and non-compliant because the scene was too uncontrolled and too unsafe for them to attempt patient care.

2.11. At approximately 4:45 p.m., Officer Janvier, the second officer to arrive on the scene, observed Officer Jordana grappling on the ground with Plaintiff. Officer Janvier perceived that Plaintiff had the advantage over the officer and observed the imminent threat to Officer Jordana. Officer Janvier ran up and struck the Plaintiff in an attempt to knock him off Officer Jordana. He was only partially successful and both officers became embroiled in a struggle with Plaintiff on the ground. Plaintiff maintained a physical advantage over both officers.

2.12. Each of the officers deployed a battery-operated non-lethal electronic control device (taser) in an attempt to incapacitate the Plaintiff so as to control his aggressive behavior and enable them to handcuff him. Neither device had any appreciable or intended effect on Plaintiff's combative, non-compliant behavior. In the course of the struggle, Officer Jordana was shocked by contact with one of the conductive wires.

2.13. As a further attempt to control Plaintiff's combative, non-compliant behavior, Officer Janvier deployed pepper spray, another non-lethal control device, but the wind blew the spray back at the officers and did not appear to mitigate Plaintiff's combative behavior.

2.14. During the struggle, Plaintiff ignored multiple commands to calm down. At some point during the struggle, when he was on his feet, Plaintiff tried to flee, he ignored officers' commands to "stop," until the officers had closed the gap between them, at which point he stopped, turned toward the advancing officers, and took a combative stance with hands raised, fists clenched, and one foot in front of the other.

2.15. At some point during the struggle the conductive wire from at least one and possibly both non-lethal battery-operated electronic control devices (tasers) broke rendering the devices totally ineffective.

2.16. Officer Gutierrez, a uniformed canine officer who had been working an off-duty assignment, happened by and observed the struggle. He observed Plaintiff kick and swinging his fist at the officers and that Plaintiff maintained the advantage over the officers. Officer Gutierrez ordered Plaintiff to lay on the ground and warned that a taser would be used, but Plaintiff ignored him and he continued violently resisting the other two officers. Officer Gutierrez then deployed his non-lethal battery-operated electronic control device (taser). The device knocked Plaintiff to the ground, enabling officers to get a handcuff on Plaintiff's left wrist. But Plaintiff continued to struggle and ignored commands to put his right hand behind his back. Officer Gutierrez deployed the taser in drive stun mode, incapacitating Plaintiff long enough to allow the other officers to complete the handcuffing. Plaintiff was cuffed and in police custody and his combative behavior was under control by approximately 4:46 p.m., although he continued to make verbal threats and boasted about being able to take on the first two police officers.

2.17. Plaintiff was arrested and charged with disorderly conduct [877.03 F.S], battery on a law enforcement officer [784.07 F.S.], resisting/obstructing an officer with violence [843.01 F.S.], resisting/obstructing an officer without violence [843.02 F.S.], and criminal mischief/vandalism [806.13 F.S.] for breaking a rear view mirror on the police vehicle during his combative, non-compliant resistance.

2.18. Plaintiff continued to be combative and threatening to officers and paramedics even after he was handcuffed. When he eventually consented, he was examined by paramedics at the

25

scene. He was not wearing a medic alert bracelet. He did not claim or inform paramedics on the scene that he had lost consciousness. Nor did he claim that he suffered an epileptic seizure, although when asked about his past medical history and current medications, he reported a history of seizures and that he was taking Depakote ER, a chemical compound that has clinical use as an anticonvulsant and mood stabilizing drug primarily in the treatment of epilepsy, bipolar disorder, major depression, migraine headaches, and schizophrenia.

2.19. Paramedics who had witnessed Plaintiff's combative behavior with police, did not observe behavior which was symptomatic of involuntary movements, convulsions, or fatigue typically associated with seizure and post seizure behavior. Plaintiff was treated for minor abrasions and cleared by paramedics for custodial transport by police.

2.20. The sector sergeant responded to the scene. Crime scene technicians responded to the scene to document the use of force. A response to resistance package was prepared.

2.21 Plaintiff was transported to a holding cell at the main station and from there to Ward D, the jail wing of Jackson Memorial Hospital, pursuant to Hialeah Police Departmental Policy and the written Intake Procedures of the Miami-Dade Department of Corrections. Plaintiff was in the custody of the Ward D medical and custodial staff from approximately 11:13 p.m. until 11:29 p.m. when his medical evaluation was completed and he was cleared for incarceration within the general inmate population of the detention facilities operated by the Miami-Dade Department of Corrections. He was then transported by the transporting officer to the Miami-Dade County Jail where he was again turned over to the Miami-Dade Department of Corrections for incarceration in the general inmate population.

3. Officers were dispatched to a report of a man lying in the street obstructing traffic.

The dispatch combined the need to investigate whether the incident involved a crime or the need to obtain emergency medical assistance with the need to provide clearance for paramedics so that they in turn could provide Plaintiff with medical care if he needed and in fact desired it.

       3.1. The 911 call for police emergency assistance fell squarely within the law enforcement duties of responding officers to investigate whether Plaintiff had been the victim or perpetrator of a criminal event or traffic infraction. Plaintiff's aggressive physical behavior established a specific, articulable basis for officers reasonably to believe that Plaintiff posed a threat to himself, to police, to other pedestrians, and to vehicular traffic in the area which justified police resort to reasonable force in responding to the law enforcement component of Plaintiff's aggressive conduct.

       3.2. The 911 call for police emergency assistance also fell squarely within the community caretaking functions of the responding officers to summon emergency medical assistance to the scene and to facilitate the ability of paramedics summoned to the scene to assess and treat the medical condition of a person who had been reported to be lying in the middle of the street from some unknown cause. Plaintiff's aggressive physical behavior established a specific, articulable basis for officers reasonably to believe that Plaintiff posed a threat to paramedic safety and hampered the ability of paramedics to provide Plaintiff with any needed medical care which justified police resort to reasonable force in responding to the community caretaking component of Plaintiff's aggressive conduct.

    4. A taser is a non-lethal battery operated electronic control device manufactured by Taser International which emits a low amperage pulse of electrical energy in 5-second cycles allowing police officers who are otherwise authorized to use force to incapacitate a combative or non-

compliant subject by causing temporary muscle contraction and pain without causing serious or permanent injury.

4.1. The taser models in use by the officers were the M26 and the X26. The M26 is powered by eight standard AA 1.5-volt or NiMH 1.2 volt rechargeable low amperage penlight batteries. The X26 is powered by two CR123A 3-volt low amperage lithium rechargeable photo batteries.

4.2. Electrical output from the M-26 or X26 taser is less than a cardiac defibrillator.

## B. DEFENSES OF CITY OF HIALEAH
## TO SPECIFIC COUNTS

### AS TO COUNT I
### § 1983 CLAIM FOR INADEQUATE TRAINING & SUPERVISION

5. The Defendant repeats and realleges each and every allegation set forth in paragraphs **1 through 4.2** above with the same force and effect as if fully set forth herein.

6. **Exhibit "A"** of Count I of the complaint fails to state and the record fails to establish a federal claim against the City of Hialeah on which relief can be granted in favor of a Plaintiff for violation of civil rights in that the acts of the officers of the Hialeah Police Department complied with all relevant legal standards at the time and place of the incident and comported with proper police training, procedure, and supervision (including discipline) as authorized by law under the factual circumstances confronted as set forth in paragraphs **1 through 4.2** above.

6.1. The totality of circumstances show that police were performing lawful law enforcement duties and community caretaker functions in investigating emergency calls for assistance involving a man lying in the street blocking traffic and that reasonable force was used to control Plaintiff's violent, combative, and aggressive behavior, to effect compliance with lawful

28

commands, to overcome non-compliance and active resistance, to defend officers from assault and battery on their persons, to prevent Pedro Santiago from injuring himself or others, and to arrest Pedro Santiago based on probable cause.

6.2. There was no underlying constitutional violation. The use of reasonable force by police in the performance of lawful duties and functions was reasonable under the totality of the facts and circumstances and the direct consequence of Plaintiff's violent, combative, aggressive and non-compliant behavior.

7. **Exhibit "A"** of Count I of the complaint fails to state and the record fails to establish federal claims against the City of Hialeah on which relief can be granted in favor of a Plaintiff for violation of civil rights in that there is a failure to identify and establish a municipal policy promulgated by a final policymaker of the City of Hialeah that caused Pedro Santiago to be subjected to a deprivation of a constitutional right under the factual circumstances confronted as set forth in paragraphs **1 through 4.2** above, and, in truth and fact, none exists.

7.1. The City of Hialeah is not subject to *respondeat superior* liability under 28 U.S.C. §1983 for alleged civil rights violations actions by its police officers.

7.2. Plaintiff has failed to establish any unconstitutional violation by a final policy maker or as a direct result of any municipal policy.

7.3. At all times material to this cause of action, the City of Hialeah Police Department had written policies, procedures and rules in effect relating to matters likely to affect the rights of persons with whom police come into contact, including the use of appropriate force in various circumstances in which officers are called upon to perform official duties, those policies, procedures and rules were reasonable, lawful and constitutional on their face, and all officers of the

29

City of Hialeah Police Department were under express orders to follow them.

7.4. At all times material to this cause of action, it was the policy and practice of the City of Hialeah to require its police officers to be trained in matters likely to affect the rights of persons with whom police come into contact, including areas relevant to the incident at issue in the pending case including basic recruit training taught in state certified and independently operated educational facilities such as the Southeast Florida Institute of Criminal Justice according to the guidelines and minimum standards established by the State of Florida.

7.5. At all times material to this cause of action, it was the policy and practice of the City of Hialeah to supervise its police officers, that policy and practice was followed with regard to the incident described in paragraphs **1 through 4.2** above, and the officers involved were appropriately supervised and, where appropriate, disciplined in matters likely to affect the rights of persons with whom police come into contact, including areas relevant to the incident at issue in the pending case.

7.6. At all times material to this cause of action, it was the policy and practice of the City of Hialeah to utilize only reasonable force in the performance of lawful and constitutional law enforcement and community care taking objectives. That policy and practice was followed with regard to the incident described in paragraphs **1 through 4.2** above.

7.7. At all times material to this action, it was the policy and practice of the City of Hialeah to summon needed emergency medical assistance for persons, including injured citizens, arrestees, and prisoners, encountered in the course of an officer's duties and that policy and practice was followed with regard to the incident described in paragraphs **1 through 4.2** above.

7.8. A federal civil rights claim against a municipal government cannot be predicated

on an alleged negligent failure to provide timely medical care, the use of negligent force, or any other negligent act by a municipal employee.

7.9. At all times material to this action, officers of the Hialeah Police Department received appropriate training in the use of non-lethal battery-operated electronic control devices designed to stun and to disable temporarily rather than to inflict more serious or more permanent injury to establish control in situations where a subject's behavior is aggressive, combative, and non-compliant and where the subject's physical movements pose a risk of harm to himself or others, regardless of whether the person is actually suffering a seizure.

7.10. Deployment of a non-lethal battery-operated electronic control device to stun and to disable temporarily rather than to inflict more serious or more permanent injury in order to establish control in situations where a subject's behavior is aggressive, combative, and non-compliant and where the subject's physical movements pose a risk of harm to himself or others, may be appropriate and reasonable regardless of whether the person is actually suffering a seizure.

8. **Exhibit "A"** of Count I of the complaint fails to state and the record fails to establish federal claims against the City of Hialeah on which relief can be granted in favor of Plaintiff for violation of civil rights in that there is a failure to identify a widespread municipal custom that caused the acts of the officers of the Hialeah Police Department to violate relevant constitutional standards at the time and place of the incident through training or supervision that was deliberately indifferent to constitutional rights under the factual circumstances confronted as set forth in paragraphs **1 through 4.2** above.

WHEREFORE, Defendant demands dismissal of the claims and judgment in its favor together with all costs of defense, including attorneys fees, as may be recoverable by law.

## AS TO COUNT I
## NEGLIGENT TRAINING

9. The Defendant repeats and realleges each and every allegation set forth in paragraphs **1 through 4.2** above with the same force and effect as if fully set forth herein.

10. The state law action in Count I of the complaint, commingled within the allegations of the federal claim set forth in **Exhibit "A"** of the same count, fails to state and the record fails and will continue to fail to establish a claim for negligence cognizable under state law against the **CITY OF HIALEAH** under the circumstances of this case.

10.1. There is no actionable duty to train police officers under state tort law.

10.2. Any action pleaded in the complaint under state law falls within the immunities accorded municipal corporations under the doctrine of sovereign immunity, the case law and the limitations, exemptions, and notice requirements set forth in section 768.28, Florida Statutes.

10.3. The training of police officers is a discretionary policy-making governmental function immune from suit under the doctrine of sovereign immunity.

10.4. All relevant material acts or omissions, if any, of the **CITY OF HIALEAH** were planning level, judgmental, or police power functions for which Defendant has no state tort liability under the doctrine of sovereign immunity and the immunities accorded municipal corporations under the case law and the limitations, waivers, exemptions, and notice requirements set forth in section 768.28, Florida Statutes.

10.5. Police are privileged to use reasonable force to defend or protect themselves or others and to carry out lawful law enforcement duties and community care taker functions.

10.6. Plaintiff has failed to satisfy the demand prerequisites to the municipality's

32

waiver of sovereign immunity.

      10.7. Police acted under circumstances where external forces thrust a "serious emergency" on them that required them to choose between different risks posed to the public of such a nature that no matter what decision they made someone would be at risk and the choices they made between risks involved what essentially is a discretionary act of executive decision making which is entitled to the protection of sovereign immunity.

      11. To the extent that **Pedro Santiago** suffered injury or damages, it was a natural and proximate consequence of his own combative and non-compliant acts and omissions.

      12. At all times material to this cause of action, and to the extent that law enforcement officers employed by the **CITY OF HIALEAH** Police Department were acting within the scope of their duties and employment, they were delegated all lawful discretion accorded police officers under the law, and they had a legal duty and discretion to take the actions and use the force described above in responding to the situation they encountered.

      13. Pedro Santiago knew or had reason to know that the persons interacting with him and attempting to restrain him and control his combative and non-compliant behavior were law enforcement officers, the officers reasonably appeared to be law enforcement officers.

      13.1. Pursuant to sections 776.051(1), 843.01 and 843.02, Florida Statutes, Pedro Santiago was not justified in resisting, obstructing, or opposing, or attempting to resist, obstruct, or oppose any of these officers in any manner whatsoever in the discharge of their lawful duties.

      13.2. Plaintiff used force and violence or the threat of force or violence against the officers, thereby committing a forcible felony during which he sustained the injuries for which his state tort claim seeks relief.

13.3. Pursuant to section 776.085(1), Florida Statutes, his use of force and violence or the threat of force or violence is a defense to the state tort claim pleaded. It is a defense to any claim for personal injury with respect to any state cause of action based on police use of force that the injuries sustained by Pedro Santiago were incurred as a participant during the commission or attempted commission of a felony which involved the use or threat of physical force or violence.

14. Any damages claimed by Plaintiff were caused by the supervening intentional or criminal acts of Pedro Santiago, himself, breaking the chain of causation as to any act or omission of the City of Hialeah or by any of its officers, employees, or agents acting within the scope of employment, and thereby barring, limiting, or estopping any and all claims of the Plaintiff against the City of Hialeah.

15. Plaintiff has failed to raise a justiciable issue of law or fact by his state tort claim against this Defendant.

16. Plaintiff's claims are subject to set-off for all benefits paid or payable to Plaintiff from any collateral source on account of his injury pursuant to section 768.76, Florida Statutes. Defendant is entitled to apportionment under Florida law and may not be subjected to judgment in an amount that exceeds the *pro rata* share of overall liability, if any, attributable to the City.

17. Any recovery of damages is subject to the limitations and restrictions set forth in the Hospital Lien Law, section 25C-2, Miami-Dade County Code of Ordinances.

18. Any recovery is subject to setoff, pursuant to section 768.041, Florida Statutes, for settlements between Plaintiff and any other defendant or non-party in satisfaction of any claim for damages arising out of the circumstances of this litigation for which Defendant may also be held liable.

WHEREFORE, Defendant demands dismissal of the claims and judgment together with all

costs of defense, including attorneys fees, as may be recoverable by law.

## COUNT II
## STATE CLAIM FOR VICARIOUS LIABILITY
## UNDER THEORY OF *RESPONDEAT SUPERIOR*

19. The Defendant repeats and realleges each and every allegation set forth in paragraphs **1 through 4.2** above with the same force and effect as if fully set forth herein.

20. Count II of the complaint fails to state and the record fails to establish a claim for negligence cognizable under state law against the **CITY OF HIALEAH** under the circumstances of this case.

20.1. Any action pleaded in the complaint under state law falls within the immunities accorded municipal corporations under the doctrine of sovereign immunity, the case law and the limitations, exemptions, and notice requirements set forth in section 768.28, Florida Statutes.

20.2. All relevant material acts or omissions, if any, of the **CITY OF HIALEAH** were planning level, judgmental, or police power functions for which Defendant has no state tort liability under the doctrine of sovereign immunity and the immunities accorded municipal corporations under the case law and the limitations, waivers, exemptions, and notice requirements set forth in section 768.28, Florida Statutes.

20.3. Hialeah police officers acted under circumstances where external forces thrust a "serious emergency" on them that required them to choose between different risks posed to the community of such a nature that no matter what decision they made someone would be at risk and the choice they made between risks involved what essentially is a discretionary act of executive decision making which is entitled to the protection of sovereign immunity.

20.4. There is no actionable duty on police officers to make decisions or to choose

35

between alternatives under state tort law.

20.5. Any action pleaded in the complaint under state law falls within the immunities accorded municipal corporations under the doctrine of sovereign immunity, the case law and the limitations, exemptions, and notice requirements set forth in section 768.28, Florida Statutes.

20.6. The decision-making of a police officer in executing a legal duty is a discretionary policy-making governmental function immune from suit under the doctrine of sovereign immunity.

20.7. All relevant material acts or omissions, if any, of the **CITY OF HIALEAH** were planning level, judgmental, or police power functions for which Defendant has no state tort liability under the doctrine of sovereign immunity and the immunities accorded municipal corporations under the case law and the limitations, waivers, exemptions, and notice requirements set forth in section 768.28, Florida Statutes.

20.8. Police are privileged to use reasonable force to defend or protect themselves or others and to carry out lawful law enforcement duties and community care taker functions.

20.9. Police acted under circumstances where external forces thrust a "serious emergency" on them that required them to choose between different risks posed to the public of such a nature that no matter what decision they made someone would be at risk and the choices they made between risks involved what essentially is a discretionary act of executive decision making which is entitled to the protection of sovereign immunity.

20.10. Plaintiff have failed to satisfy the demand prerequisites to the municipality's waiver of sovereign immunity.

20.11. There is no action cognizable under state law for negligence premised on an

intentional act or omission.

20.12. The City is not vicariously liable in tort for the acts or omissions of an officer, employee, or agent committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disrgard of human rights, safety or property.

21. To the extent that **Pedro Santiago** suffered injury or damages, it was a natural and proximate consequence of his own combative and non-compliant acts and omissions.

22. At all times material to this cause of action, and to the extent that law enforcement officers employed by the **CITY OF HIALEAH** Police Department were acting within the scope of their duties and employment, they were delegated all lawful discretion accorded police officers under the law, and they had a legal duty and discretion to take the actions and use the force described above in responding to the situation they encountered.

23. Pedro Santiago knew or had reason to know that the persons interacting with him and attempting to restrain him and control his combative and non-compliant behavior were law enforcement officers, the officers reasonably appeared to be law enforcement officers.

23.1. Pursuant to sections 776.051(1), 843.01 and 843.02, Florida Statutes, Pedro Santiago was not justified in resisting, obstructing, or opposing, or attempting to resist, obstruct, or oppose any of these officers in any manner whatsoever in the discharge of their lawful duties.

23.2. Plaintiff used force and violence or the threat of force or violence against the officers, thereby committing a forcible felony during which he sustained the injuries for which his state tort claim seeks relief.

23.3. Pursuant to section 776.085(1), Florida Statutes, Plaintiff's use of force and violence or his threat of force or violence is a defense to the state tort claim pleaded. It is a defense

to any claim for personal injury with respect to any state cause of action based on police use of force that the injuries sustained by Pedro Santiago were incurred as a participant during the commission or attempted commission of a felony which involved the use or threat of physical force or violence.

24. Any damages claimed by Plaintiff were caused by the supervening intentional or criminal acts of Pedro Santiago, himself, breaking the chain of causation as to any act or omission of the City of Hialeah or by any of its officers, employees, or agents acting within the scope of employment, and thereby barring, limiting, or estopping any and all claims of the Plaintiff against the City of Hialeah.

25. Plaintiff has failed to raise a justiciable issue of law or fact by his state tort claim against this Defendant.

26. Plaintiff's claims are subject to set-off for all benefits paid or payable to Plaintiff from any collateral source on account of his injury pursuant to section 768.76, Florida Statutes. Defendant is entitled to apportionment under Florida law and may not be subjected to judgment in an amount that exceeds the *pro rata* share of overall liability, if any, attributable to the City.

27. Any recovery of damages is subject to the limitations and restrictions set forth in the Hospital Lien Law, section 25C-2, Miami-Dade County Code of Ordinances.

28. Any recovery is subject to setoff, pursuant to section 768.041, Florida Statutes, for settlements between Plaintiff and any other defendant or non-party in satisfaction of any claim for damages arising out of the circumstances of this litigation for which Defendant may also be held liable.

WHEREFORE, Defendant demands dismissal of the claims and judgment together with all costs of defense, including attorneys fees, as may be recoverable by law.

## COUNTERCLAIM FOR DECLARATORY JUDGMENT

38

29. This is an action pursuant to Chapter 86, Florida Statutes for a Declaratory Judgment to declare the rights, status, and other equitable or legal relations of the City of Hialeah with respect to specific criminal history information pertaining to the arrest of Pedro Santiago Santana on September 28, 2007, which is contained in City records identified in an order of expungement directing the City of Hialeah to expunge those records.

30. The City of Hialeah is a municipal corporation organized by charter under the laws of the State of Florida which exercises its law enforcement powers and duties through the City's Police Department.

31. The Hialeah Police Department is an organizational unit of the City of Hialeah and does not have the legal capacity to sue or be sued except by or through the City of Hialeah as a municipal corporation.

32. The City, acting through its Police Department, was the "arresting agency" in the criminal case of *State vs. Pedro Santiago*, Case No. F07-34046 in the Criminal Division of the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, which arose out of the facts and circumstances of Santiago's arrest on September 28, 2007.

33. Officers Jordana and Janvier, in full uniform and known or reasonably appearing to be sworn law enforcement officers of the City of Hialeah, while engaged in the execution of their legal duty as law enforcement officers, including arresting Pedro Santiago Santana, were victims of physical violence at the hands of Pedro Santiago Santana who used physical force and violence against them to resist their lawful commands, directions, and actions.

34. The use of force and violence against the officers was the basis for criminal charges of battery on a law enforcement officer and resisting an officer with violence.

35. The criminal case against Pedro Santiago was *nolle prossed* by the State Attorney's Office despite objection by the officers.

36. On January 20, 2008, Pedro Santiago obtained a court order expunging the criminal history information pertaining to his arrest on September 28, 2007. [**Exhibit "B"**] In relevant part, that order directed that the "Hialeah Police Department (arresting-agency), ... comply with the procedures set forth in section 943.9585 [sic], Florida Statutes, and appropriate regulations of the Department of Law Enforcement, and ... further forward a copy of this order to any agency that their records reflect has received the instant criminal history record information ... ." The order further directed that the "Hialeah Police Department shall expunge all information concerning indicia of arrest or criminal history information regarding this Defendant in accordance with the procedures set forth in section 943.0585, Florida Statutes, and Florida Rule of Criminal Procedure 3.692."

37. The City of Hialeah was not made a party to the expungement proceedings nor given prior notice that its rights would be affected by legal proceedings held on January 20, 2008.

38. Pedro Santiago was required, pursuant to § 943.0585(3)(a), F.S., to **serve** the completed petition to expunge upon the arresting agency in judicial proceedings seeking expungement so as to afford the arresting agency the opportunity "to respond to the court regarding the completed petition to expunge."

39. The completed petition to expunge was not served on the Hialeah Police Department as prescribed by law.

      39.1. The City of Hialeah is a municipality organized and existing under the laws of the State of Florida which provides services to its residents through various departments, one of which is law enforcement.

39.2. Law enforcement services are provided through the City's Police Department, Hialeah City Charter, Art. I, §1.01, Art. IV, §4.04; Hialeah City Code, Art. II, Div. 2, §§2-56 - 2-57, which was the "arresting agency" in the arrest of Plaintiff concerning which expungement of the City's records was ordered.

39.3. The Hialeah Police Department is not a legal entity, does not have any legal existence separate and apart from the City of Hialeah, and cannot sue or be sued apart from suing the municipality, itself.

39.4. Jurisdiction to adjudicate the interests of the Hialeah Police Department, as the organizational instrument through which the City of Hialeah, a municipal entity, exercises its policing functions, including possession, custody, and control over its criminal history records, requires proper service on the municipality pursuant to § 48.111(1), F.S., and adequate notice and opportunity to appear prior to adjudication of its rights and interests.

40. There is good cause for believing that the order expunging the non-judicial criminal history records of Pedro Santiago, the Defendant identified with the above-numbered criminal case, is not binding on the City of Hialeah.

41. Pursuant to § 943.0585(3)(d), F.S., "No cause of action, including contempt of court shall arise against any criminal justice agency for failure to comply with an order to expunge when the ... order does not otherwise comply with the requirements of this section."

42. Plaintiff has waived any privilege by the following actions:

42.1. On June 16, 2009, GONZALO R. DORTA, P.A., as attorneys for Plaintiff, initiated written pre-suit notice of claim pursuant to §768.28(6), F.S., against the City of Hialeah.

42.1.1. The notice alleged the wrongful arrest and use of excessive force by

41

its officers arising out of the circumstances of his arrest on September 28, 2007, which resulted in the criminal case whose records had been expunged, and put the City on notice of the intent to pursue a civil lawsuit against it. **[Exhibit "A" to the Complaint]**.

42.1.2. Plaintiff was identified by name as the Defendant in the above-numbered criminal case and specific allegations were set forth in the notice which recreated the substance of expunged criminal history information.

42.1.3. Both state and federal claims were alleged to arise out of the circumstances of the arrest incident.

42.1.4. The notice attached as an "Enclosure" to the notice a copy of the arrest report **[Exhibit "C"]**, which was one of the very records containing criminal history information subject to the expungement order.

42.1.5. The copy of the expunged arrest report enclosed with the notice of claim was **unredacted**.

42.2. On August 7, 2009, GONZALO R. DORTA, P.A., as attorneys for Plaintiff, made written demand **[Exhibit "D"]** that the City "preserve all electronic and written communications, correspondence by and between any City employee or official (former or current) and/or with political subdivisions, law enforcement and/or with any other person or lawyer relating and/or arising from the incident described in ... [the] statutory notice ... ."

42.2.1. Plaintiff was again identified by name as the Defendant in the above-numbered expunged criminal case and a copy of the pre-suit notice of claim was enclosed and referenced.

42.3. On September 2, 2009, GONZALO R. DORTA, P.A., as attorneys for Plaintiff,

42

made a written public records request **[Exhibit "E"]** requiring the City to produce numerous

documents, including "[a]ll close-out memos, internal affairs reports and writings relating to the

incident described in the attached Police Report (Exhibit "A")**[Exhibit "C" herein]** [#6] ... , [a]ll

emails relating, discussing the subject incident [#7] ... , and [t]he results of all internal or

Departmental investigations conducted on the City's police officers that handled the subject incident

[#8]."

         42.3.1. The written public records request concluded with the following notice

and admonishment:

         42.3.2. You are <u>also</u> put on <u>notice to preserve</u>, in their original form, these
requested records, all communication recordings with, by and between all officers involved in the
subject incident, and <u>further preserve and not modify, alter, erase or discard any recordings, e-mails,
memos, internal, inter and/or intradepartmental memos, e-mails</u>, and written communications
relating to the subject incident and/or referring and/or commenting about the police officers involved
in the subject incident; investigative reports performed or undertaken as a result of prior incidents
of any kind that involves any of the police officers involved in the subject incident, and all other
records, personnel or otherwise, involving the police officers involved in the subject incident,
including all evidentiary and/or physical evidence collected from the subject incident, whether,
tested, studied and/or reviewed, pursuant to investigative activities undertaken on the subject
incident.

         42.3.3. Your failure to preserve such records, documents and evidence may
expose you and/your Department and City to civil liability.

         42.3.4. Many of the documents requested as well as those whose failure to

preserve were subject to the notice and admonishment are or include criminal history information

subject to the expungement order.

         42.3.5. Plaintiff attached another unredacted copy of the expunged arrest

report as "Exhibit A" **[Exhibit "C" herein]** to its written request.

         42.3.6. Again, Plaintiff was identified by name as the Defendant in the above-

43

numbered expunged criminal case.

42.4. On May 5, 2010, Plaintiff served a Request for Production on the City of Hialeah simultaneously with service of the summons and complaint in this litigation. [**Exhibit "F"**]. The request demanded inspection and/or production of copies within forty-five (45) days of service of documents which included those described as "all records generated by the City of Hialeah Police Department in connection with the incident" and "all reports arising from any internal investigation of the police officers behavior, conduct and/or work in connection with the incident."

42.5. The pre-suit notice of claim, including the unredacted arrest report, the spoliation notice, including an enclosed copy of the pre-suit notice, and the public records request, including another copy of the unredacted arrest report, each became a "public record."

42.5.1. The pre-suit notice [**Exhibit "A" to the Complaint**] enclosing an unredacted copy of the expunged arrest report [**Exhibit "C"**] was received by the Mayor pursuant to §768.28(6), F.S., and the Chief of Police in connection with the transaction of official business on behalf of the City.

42.5.2. The spoliation notice [**Exhibit "D"**] was received in connection with the transaction of official business on behalf of the City by the Mayor, the Chief of Police, the City Attorney, and the City's third party administrator of liability claims.

42.5.3. The preservation demand contained in the public records request [**Exhibit "E"**] was received in connection with the transaction of official business on behalf of the City by the Mayor, the Chief of Police, the City Attorney, and the City's third party administrator of liability claims.

42.5.4. The written public records request [**Exhibit "E"**], including another

44

unredacted copy of the expunged arrest report [**Exhibit "C" herein**], was received by the City Clerk's Office pursuant to §119.07, F.S., and in connection with the transaction of official business on behalf of the City.

42.5.5. The request for production [**Exhibit "F"**] was served on the Mayor pursuant to §48.111(1), F.S., and received by him in connection with the transaction of official business.

42.5.6. As defined by §119.011(12), F.S., public records include "all documents, papers, [and] letters ... received pursuant to law ... or in connection with the transaction of official business ... ."

42.5.7. Plaintiff created and recreated public records of some of the very information which was included in criminal history information that had be expunged.

43. Continued expungement of the criminal history information pertaining to Plaintiff's arrest allows Plaintiff to control and manipulate access to records and information about the totality of the facts and circumstances which bear on defense to the claimed liability asserted in Plaintiff's litigation against the City and gives him unfair and unjust advantage through use of a statutory privilege that was intended to be a shield, not a sword in the prosecution of a claim for money damages.

44. The City is in doubt about its rights to preserve, maintain, and access its own records in its defense in the lawsuit commenced by Plaintiff Pedro Santiago Santana. The records are necessary to refresh recollection, to provide the best evidence of public records setting forth the activities of the Hialeah Police Department and matters observed and recorded by its officers pursuant to duty imposed by law as to matters which there was a duty to report, to corroborate or refute witness accounts, to locate other evidence and witnesses, to provide the trier of fact with a documentary basis

45

for evaluating the credibility and recollection of witnesses, and to provide leads for the discovery of evidence and witnesses to be reviewed, assessed, and admitted in the defense of the City.

Wherefore, the City demands a judgment declaring the right to preserve, maintain, and access its own records in their entirety regarding the facts and circumstances of Plaintiff's arrest on September 28, 2007, and the judicial records of Plaintiff's prosecution. In the alternative, the City demands dismissal of the claims of municipal liability under state and federal law to which the expunged records relate and as to which the privilege of expungement was intended to provide Plaintiff a shield but not a sword.

### Certificate of Service

I hereby certify that a true and correct copy of the foregoing was mailed to Gonzalo R. Dorta, Esq., GONZALO R. DORTA, P.A., Attorneys for Plaintiff, 334 Minorca Avenue, Coral Gables, FL 33134, this 28th day of May, 2010.

William M. Grodnick
City Attorney

Alan E. Krueger
Assistant City Attorney
City of Hialeah
501 Palm Avenue
Hialeah, Florida 33011-0040
305/883-5853

By _____
Alan E. Krueger
FBN 151680

\L10-095 City's Answer & Defenses and Counterclaim

46

**SEQUENTIALLY NUMBERED ALLEGATIONS
AS SET FORTH IN EX. "A" INCORPORATED BY REFERENCE
IN PARAGRAPH 22 THROUGH PARAGRAPH 4 OF THE COMPLAINT**

Sequentially Numbered Allegations
As Set Forth in Ex. "A" Incorporated by Reference
in Paragraph 22 through Paragraph 4 of the Complaint

**[22.1]** Please be advised that this firm represents <u>Pedro Santiago Santana</u> arising from the wrongful arrest and use of excessive force on our client on September 28, 2007, by several police officers: Officers - <u>Gutierrez</u>, Badge #1202, <u>Jordan</u>, Badge#1598 and <u>Fritz</u>, Badge #1620 from the Hialeah Police Department.

**[22.2]** On or about September 28. 2007. the prospective defendant officers without any legal or just cause brutally assaulted and deployed a taser gun several times on Mr. Santana in their attempt to subdue him. **[22.3.]** The incident in question occurred when Mr. Santana who suffers from neurological dysfunction, was experiencing an epileptic seizure had collapsed to the ground was unable to respond to the officers commands. **[22.4.]** When the police officers arrived on the scene, Mr. Santiago was still having an epileptic seizure. **[22.5.]** The officers attempted to subdue him by lifting him up from the ground by use of excessive force to hold him and unnecessarily deploying their taser X26 stun weapon to control him down.

**[22.6.]** This excessive use of force is actionable under Section 1983 of the Federal Civil Rights Statute, common law and the City is also vicariously liable for its officers' negligence and excessive use of force on my client.

**[22.7.]** The police officers were acting under their scope of employment with the City of Hialeah ("City") when the incident occurred. **[22.8.]** These officers did not receive any training or if they did, the training was inadequate to educate the officers on how to properly and safely address a suspect in epileptic seizure while responding to a simple traffic obstruction complaint.

**[22.9.]** My client was experiencing an epileptic attack when the officers sought to control him. **[22.10.]** One in an epileptic seizure cannot control his body movements. **[22.11.]** Thus, my client was unable to control the involuntary movements of his arms. **[22.12.]** The officers mistakenly attributed this behavior to one resisting arrest with violence. **[22.13.]** When in his epileptic sequence, my client also experienced visual and cognitive distortion of perception and began to hallucinate. **[22.14.]** This behavior is classic symptoms [sic] of an epileptic seizure, not a volitional act of resisting arrest. **[22.15.]** My client had been under treatment for his epileptic condition since October 2004.

**[22.16.]** When my client went into his epileptic attack he became combative and non-responsive to the officers' commands. **[22.17.]** Undisputedly. he was in an epileptic episode and the officers should have recognized this condition. [22.18.] Furthermore, had the officers been properly trained or trained at all on this situation, the obvious signs of his medical condition were apparent and needed to be handled accordingly.

**[22.19]** The City's officers mistakenly viewed my client's involuntary body movements and combative response as a civilian resisting arrest. **[22.20]** In response, the City's officers tassered [sic] him several times and man-handled him. **[22.21.]** More than one officer subdued my client and did

so by using excessive force when it was unnecessary to do so.

**[22.22.]** Consequently. my client was arrested and hospitalized for a period at Jackson Memorial Ward, where he was treated for multiple contusions, to his body including multiple taser puncher [sic] wounds to front, side and back of his upper torso as well as a right hand sprain with hairline fracture to his right hand thumb. **[22.23.]** These injuries arise not from the use of reasonable force.

**[22.24.]** The City's Police Department does not provide its officers the necessary training to familiarize its patrol officers with the manifestation of physical or neurological induced involuntary body movement attributable to a medical condition like the circumstances that the responding officers encountered the day in question. **[22.25.]** These are situations that are clearly foreseeable matters that an officer will expect to encounter in his work.

**[22.26.]** My client was supposedly obstructing traffic. **[22.27.]** Clearly not a severe crime. **[22.28.]** Mr. Santiago did not pose an immediate threat to the safety of the officers or others. [22.29.] In fact, Mr. Santiago was the only person in need of help. **[22.30.]** The force used to subdue my client was excessive and unreasonable.

**[22.31.]** The City has the duty to train and supervise law enforcement officials. **[22.32.]** When the City either persistently fails to do so or shows a deliberate indifference to a policy that is the moving force behind the civilian's injuries, the City is liable under Section 1983. **[22.33.]** The City's officers were clearly indifferent to may client's medical needs.

**[22.34.]** Mr. Santiago was uncharacteristically walking in the roadway hindering the flow of traffic into the parking lot of a small strip center because he was in a seizure episode. **[22.35.]** The City's officers were the ones who picked my client from the ground where he had fallen but only after my client had been subjected to several applications of their M26 Taser.

**[22.36.]** The use of the taser was excessive and unreasonable under the circumstances. **[22.37.]** It was clear that my client was not in control of his bodily movements and exhibiting behavior akin to one undergoing some neurological or medical-related episode. **[22.38.]** Because of his illness, my client was unable to respond to verbal commands. **[22.39.]** The use of a taser is inappropriate when a suspect is nonresponsive due to physical, cognitive or mental illness when the condition is clearly manifested by the suspect's conduct. **[22.40.]** A situation that these officers should have been trained how to handle when confronted with it since, it is a foreseeable event in the life of an officer.

**[22.41.]** A city is responsible to ensure that its police force is adequately train [sic] to deal with those in the public who are mentally disturbed or exhibit some other form of medical condition or physical impairment. (*Russo v. City of Cincinnati,* 953 F.2d 1036 (6th Cir. 1992).

**[22.42.]** The use of the taser exacerbated the medical condition of my client. **[22.43.]** It is of no consequence that maybe the City's police force does not regularly encounter suspects with physical or mental conditions, even though it is highly unlikely that the City's law enforcement

patrol have never encountered suspects with medical or mental impairment. **[22.44.]** Certainly, the situation the officers encountered on this day is one that a police officer can reasonably expect to confront. (*Brown v. Gray*, 227 F.3d 1278 (10th Cir. 2000).

　　**[22.45.]** Therefore, the City showed a deliberate indifference to the constitutional and civil rights of those suffering from mental or physical infirmities who because of that impairment, are unable to understand or respond to orders and cannot control their actions. **[22.46.]** These officers were not provided sufficient training and education so as to detect signs or behavior attributable to a medical condition. **[22.47.]** As a result of that deficiency, these officers mistakenly treated my client as a violent offender and used excessive force to subdue him when in reality, my client needed medical care. **[22.48.]** Instead, he was subjected to several applications of the taser gun under circumstances that did not warrant that force. **[22.49.]** Hence, the City is liable under Section 1983 for its employee's use of excessive force resulting in the violation of my client's rights under the 4th and 14th Amendment [sic] of the U.S. Constitution and his civil rights and constitutional rights under state law.

　　**[22.50.]** Apart from the above theories of recovery, the City is vicariously responsible for its officers' failure to use the proper and reasonable force under the circumstances. **[22.51.]** These officers used excessive force and were unreasonably aggressive in their attempt to control my client when he was undergoing an epileptic episode. **[22.52.]** Because of their negligence, my client had to be hospitalized for injuries resulting from the officers' negligence in both using excessive force and not recognizing or providing the necessary medical care to my client to protect him from suffering additional injuries.

　　**[22.53.]** Each officer is liable for his use of excessive force that exceeded the force required under the circumstances. **[22.54.]** Each officer subjected my client to assault and battery in their use of unjustifiable and deadly force through their repeated application of the taser gun and repeated blows to the body.

　　**[22.55.]** These are the theories and basis of liability asserted by my client against the City and the officers.

　　**[22.56.]** In conclusion, the State Attorney's office decided to drop the action. **[22.57.]** We submit that said decision arose from the clear and irrefutable evidence that my client's actions were caused by his epileptic episode and not because he intended to resist arrest or disobey the orders of the officers at the scene. **[22.58.]** We have enclosed some medical records with this notice to better acquaint you with the injuries inflicted on my client.

　　**[22.59.]** The aforesaid presuit notice is furthermore supplemented by the following statement applicable to the Claimant: The Claimant does not have nor owe any prior adjudicated claim in excess of $200, involving fees, fines, penalties, judgments or victim restitution fund.

　　**[22.60]** This letter shall serve as our formal notice under Section 768.28 that our client will pursue the theories of recovery set out above. **[22.61]** In providing this notice. the claimant does not concede that this notice is a condition precedent to our instituting a claim under Section 1983. *See*,

*Spooner v. Department of Corrections, State of Florida,* 488 So.2d 897 (Fla 1st DCA 1986); *Maggio v. Florida Department of Labor and Employment Security, etc.,* 899 So.2d 1074 (Fla. 2005). **[22.62]** This notice is provided as it pertains to the common law tort actions for which this presuit notice is required notwithstanding our intention of pursuing civil statutory and constitution [sic] remedies.

# EXHIBIT B

FDLE CERTIFICATE NUMBER 82760058

IN THE CIRCUIT COURT OF THE 11th JUDICIAL CIRCUIT OF FLORIDA,
IN AND FOR MIAMI DADE COUNTY

FILED

JAN 30 2009

STATE OF FLORIDA,

Plaintiff,

CRIMINAL DIVISION

CASE NO.: ████████

JUDGE: NUSHIN SAYFIE

PEDRO SANTIAGO,

Defendant.

ORDER TO EXPUNGE PURSUANT TO
SECTION ████████████████ FS.
AND FRCrP 3.692.

_____/

THIS CAUSE having come on to be heard before me on January 30th, 2009 upon a Motion to Expunge certain records of the Defendant's arrest on September 28th, 2007, and the court having heard argument of counsel and being otherwise fully advised in the premises, the court hereby finds the following:

1. The Defendant has never previously been adjudicated guilty of a criminal offense or a comparable ordinance violation.

2. Th██████████████████████████████████████ from the arrest or c█████████████

3. Th████████████████████████████ records expungement or sealing.

4. No indictment or information was ever filed in this case against the Defendant; or an indictment or information filed against the Defendant was dismissed by the prosecutor or the court.

5. That a Certificate of Eligibility, Number 82760058, has been issued to the Defendant by the Florida Department of Law Enforcement. Whereupon it is,

ORDERED AND ADJUDGED that the Motion to Expunge Court Records is hereby granted. All court records pertaining to the above-styled case shall be expunged in accordance with the procedures set forth in Florida Rule of Criminal Procedure 3.692; and it is further

ORDER TO EXPUNGE PURSUANT TO SECTION 943.0585 (2); 943.059(2) , F.S., AND FRCrP 3.692,
Petro Romage Case No. : █████

**ORDERED AND ADJUDGED** that the clerk of this court shall forward a certified copy of

this order to the state attorney and Hialeah Police Department (arresting-agency), who will comply

with the procedures set forth in section 943.9585, Florida Statutes, and appropriate regulations of

the Department of Law Enforcement, and who will further forward a copy of this order to any

agency that their records reflect has received the instant criminal history record information; and it

is further

**ORDERED AND ADJUDGED** that Hialeah Police Department shall expunge all

information concerning indicia of arrest or criminal history information regarding this Defendant in

accordance with the procedures set forth in section 943.0585, Florida Statutes, and Florida Rule of

Criminal Procedure 3.692.

All costs of certified copies involved herein are to be borne by the Defendant.

**DONE AND ORDERED** in Chambers at Miami, Dade County, Florida on this _____ day

of JAN 1 8 2008, 2008.

_____
NUSHIN SAYFIE
CIRCUIT COURT JUDGE

CC:    Roberto E. Pertierra, Esq.        SEND CERTIFIED COPY TO:
       State Attorney's Office           SAU _____ ✓
       Hialeah Police Department         MDPD _____ ✓
                                         ARR. AGENCY _____ D✓
                                         ATTY/DEF. _____ ✓
                                         FDLE _____
                                         MICRO GRAPHICS _____
                                         PROBATION _____



STATE OF FLORIDA COUNTY OF DADE
I HEREBY...
HARVEY █████, Clerk of Circuit and County Courts
Deputy Clerk

# **EXHIBIT C**

001698

## COMPLAINT/ARREST AFFIDAVIT

| OBTS NUMBER | | | | | POLICE CASE NO. |
|---|---|---|---|---|---|

| SPECIAL OPERATION: | ☑ FELONY ☑ MISD ☐ TRAFFIC ☐ JUV ☐ DV ☐ MOVES ☐ CIV INF ☐ WARRANT   FUGITIVE WARRANT: ☐ In-state ☐ Out of state | JAIL NO. | PMH ☐ Yes ☐ Used ☐ Unknown |
|---|---|---|---|

| IDS NO. | AGENCY CODE 04 | MUNICIPAL P.D. DEF. ID NO. 12044170 | MDPD RECORDS AND ID NO. | STUDENT ID NO. | GANG ACTIVITY RELATED ARREST ☐   FRAUD RELATED ARREST ☐ |
|---|---|---|---|---|---|

| DEFENDANT'S NAME (LAST, FIRST, MIDDLE) | ALIAS and / or STREET NAME N/A | SIGNAL: ☐ 100 ☐ 150 ☐ 200 ☐ 300 ☐ 400 ☐ 500 |
|---|---|---|

| AGE 48 | RACE W | SEX M | ☐ Hispanic ☑ Not Hispanic  ETHNICITY: Dominican Rep | HEIGHT 5'9 | WEIGHT 190 | HAIR COLOR Blk | HAIR LENGTH SHRT | HAIR STYLE Oth | EYES Brow | GLASSES ☐ Yes ☑ No | FACIAL HAIR Mus | TEETH Non |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

| SCARS, TATTOOS, UNIQUE PHYSICAL FEATURES (Location, Type, Description) N/A | PLACE OF BIRTH (City, State/Country) Dominican Republic |
|---|---|

| LOCAL ADDRESS (Street, Apt. Number) | (City) | (State) | (Zip) | PHONE | CITIZENSHIP U.S. |
|---|---|---|---|---|---|

| PERMANENT ADDRESS (Street, Apt. Number) SAME AS ABOVE ☐ HOMELESS ☐ UNKNOWN | (City) | (State/Country) | (Zip) | PHONE | OCCUPATION Nurse |
|---|---|---|---|---|---|

| ☐ BUSINESS OR ☐ SCHOOL NAME AND ADDRESS (Street) Hialeah Convalescent Home   1900 W. 28 St | (City) Hialeah | (State/Country) FL dade | (Zip) 33012 | PHONE (305) 825-2437 | ADDRESS SOURCE: ☐ DL ☒ Verbal ☐ |
|---|---|---|---|---|---|

| DRIVER'S LICENSE NUMBER / STATE | SOCIAL SECURITY NO. | WEAPON SEIZED? Type ☐ Yes ☒ No   If Def. has Concealed Weapons Permit PERMIT # | INDICATION OF: Y N UNK Alcohol Influence ☐ ☐ ☒   Drug Influence ☐ ☐ ☒ |
|---|---|---|---|

| ARREST DATE (MM/DD/YYYY) 09-28-2007 | ARREST TIME (HH:MM) 1635 | ARREST LOCATION (Include name of business) 2899 West 2 Ave | GRID |
|---|---|---|---|

| CO-DEFENDANT NAME (Last, First, Middle) 1. | DOB (MM/DD/YYYY) | ☐ IN CUSTODY ☐ FELONY ☐ JUVENILE ☐ AT LARGE ☐ DV ☐ MISDEMEANOR |
|---|---|---|
| CO-DEFENDANT NAME (Last, First, Middle) 2. | DOB (MM/DD/YYYY) | ☐ IN CUSTODY ☐ FELONY ☐ JUVENILE ☐ AT LARGE ☐ DV ☐ MISDEMEANOR |
| CO-DEFENDANT NAME (Last, First, Middle) 3. | DOB (MM/DD/YYYY) | ☐ IN CUSTODY ☐ FELONY ☐ JUVENILE ☐ AT LARGE ☐ DV ☐ MISDEMEANOR |

| JUV only | ☐ Parent/s ☐ Guardian ☐ Foster Care | (Name) | (Street, Apt. Number) | (City) | (State/Country) | (Zip) | (Phone) | Contacted? ☐ Yes ☐ No |
|---|---|---|---|---|---|---|---|---|

| CHARGES | CHARGE AS: | COUNTS | FL STATUTE NUMBER | VIOL. OF SECT | CODE OF | UCR | DV | WARRANT TYPE OR TRAFFIC CITATION |
|---|---|---|---|---|---|---|---|---|
| 1. Battery on a L.E.O | ☒ F.S. ☐ ORD | 1 | 784.07 | | | | | ☐ AO ☐ CAPIAS ☐ BW ☐ PW ☐ PW ☐ JUV PU ☐ AW ☐ DW ☐ WRT   CASE #: |
| 2. Resisting With Violence | ☒ F.S. ☐ ORD | 1 | 843.01 | | | | | ☐ AO ☐ CAPIAS ☐ BW ☐ PW ☐ PW ☐ JUV PU ☐ AW ☐ DW ☐ WRT   CASE #: |
| 3. Resisting Without Violence | ☒ F.S. ☐ ORD | 1 | 843.02 | | | | | ☐ AO ☐ CAPIAS ☐ BW ☐ PW ☐ PW ☐ JUV PU ☐ AW ☐ DW ☐ WRT   CASE #: |
| 4. Criminal Mischief | ☒ F.S. ☐ ORD | 1 | 806.13 | | | | | ☐ AO ☐ CAPIAS ☐ BW ☐ PW ☐ PW ☐ JUV PU ☐ AW ☐ DW ☐ WRT   CASE #: |

The undersigned certifies and swears that he/she has just and reasonable grounds to believe, and does believe that the above named Defendant committed the following violation of law:

On the 28 day of Sept 20 07 at 16 39 perhaps at 2899 West 2 Ave (Location, include name of business) (Numana, be specific)

Units Were dispatched Emergency mode (lights and sirens) reference a Male in the roadway. When officers arrived they made contact with _____ Subject, who was in the roadway obstructing the travel lanes. Officers asked the subject to step out of the roadway and move over to their vehicles. The subject became irate yelling and screaming at the officers. The subject was told to calm down and comply with the officers orders, subject ignored the officers orders waving his hands and arms in the air. A Crowd began to form of customers from

PAGE 1 OF 3

| HOLD FOR OTHER AGENCY Name: | VERIFIED BY | ☐ HOLD FOR BOND HEARING, DO NOT BOND OUT (Complaint Affidavit for Bond Hearing) | I understand that should I willfully fail to appear before the court as required by this notice to appear that I may be held in contempt of court and a warrant for my arrest shall be issued. Furthermore, I agree that notice concerning the time, date, and place of all court hearings should be sent to the above address. I agree that it is my responsibility to notify Clerk of the Court (Juveniles notify Juvenile Division) anytime that my address changes. |
|---|---|---|---|
| I SWEAR THAT THE ABOVE STATEMENT IS TRUE AND CORRECT. | | SWORN TO AND SUBSCRIBED BEFORE ME, THE UNDERSIGNED AUTHORITY THIS | |
| OFFICER/COMPLAINANT'S SIGNATURE | COURT ID NUMBER/DC CODE | DAY OF | You need not appear to court, but must comply with the instructions on the reverse side hereof. |
| NAME (Printed) | AGENCY NAME Hialeah PD | Deputy of the Court in Notary | Signature of Defendant / Juvenile and Parent or Guardian |

82.02.09-9  Rev. 05/06

(right thumb print)

**COMPLAINT/ARREST AFFIDAVIT CONTINUATION**

| OBTS NUMBER | | | | COURT CASE NO. | | | |
|---|---|---|---|---|---|---|---|
| JAIL I.D. | | | | | | | |

| IDS NO. | AGENCY CODE | MUNICIPAL P.D. DEF. ID NO. | MDPD RECORDS AND ID NO. | | DOB (MM/DD/YYYY) |
|---|---|---|---|---|---|
| | 04 | 1204475 | | | |

DEFENDANT'S NAME (LAST, FIRST, MIDDLE)

ADDITIONAL CO-DEFENDANT NAME (Last, First, Middle) — DOB (MM/DD/YYYY) — ☐ IN CUSTODY ☐ FELONY ☐ JUVENILE / ☐ AT LARGE ☐ DV ☐ MISDEMEANOR

ADDITIONAL CO-DEFENDANT NAME (Last, First, Middle) — DOB (MM/DD/YYYY) — ☐ IN CUSTODY ☐ FELONY ☐ JUVENILE / ☐ AT LARGE ☐ DV ☐ MISDEMEANOR

| ADDITIONAL CHARGES | CHARGE AS: | COUNTS | FL STATUTE NUMBER | VIOL OF SECT | CODE OF | UCR | DV | WARRANT TYPE OR TRAFFIC CITATION |
|---|---|---|---|---|---|---|---|---|
| 5. Disorderly Conduct | ☐ F.S. ☐ ORD | 1 | 877.03 | | | | | |
| 6. | ☐ F.S. ☐ ORD | | | | | | | |
| 7. | ☐ F.S. ☐ ORD | | | | | | | |
| 8. | ☐ F.S. ☐ ORD | | | | | | | |

near by buisnesses. The officers continued to order the subject to calm down and stop yelling. When the officers attempted to take the subject into custody he began tensing his arms preventing officers from handcuffing him. The officers ordered the subject to stop resisting which he ignored and began to physically resist the officers. The subject turned towards officer Jordens pulling his arm out of officer Jordens's grip while officer Jordens was attempting to handcuff him. The subject then pushed officer Jordens knocking him to the ground. While on the ground the subject stepped toward officer Jordens raising his arms to strike officer Jordens. officer Fritz came to the aid of officer Jordens striking the subject and knocking him to the ground. Both officers then got on top of the subject to handcuff him. The subject began swinging his arms in an attempt to strike the officers in the head and body. The subject struck officer Jordens in the right arm. Subject then got up from the ground and began to flee. Both officers gave orders to stop which the subject ignored and continued running. When officers pursued the subject closing the distance the subject stopped

PAGE 2 of 3

HOLD FOR OTHER AGENCY

Name:

I SWEAR THAT THE ABOVE STATEMENT IS TRUE AND CORRECT.

OFFICER'S / COMPLAINANT'S SIGNATURE     COURT ID NUMBER/LOC. CODE

NAME (Printed)   Hickh PD
                 AGENCY NAME

VERIFIED BY

☐ HOLD FOR BOND HEARING, DO NOT BOND OUT (On Nebbia/Arthur Bond Hearing).

SWORN TO AND SUBSCRIBED BEFORE ME, THE UNDERSIGNED AUTHORITY THIS ___ DAY OF ___

Deputy of the Court/Notary Public

☐ I understand that should I willfully fail to appear before the court as required by this notice to appear that I may be held in contempt of court and a warrant for my arrest shall be issued. Furthermore, I agree that notice concerning the time, date, and place of all court hearings should be sent to the above address, I agree that it is my responsibility to notify Clerk of the Court (Juveniles notify Juvenile Division) anytime that my address changes.

☐ You need not appear in court, but must comply with the instructions on the reverse side hereof.

Signature of Defendant / Juvenile and Parent or Guardian

32.02.09-B   Rev. 05/06

| OBTS NUMBER | | **COMPLAINT/ARREST AFFIDAVIT** **CONTINUATION** | | POLICE CA | |
|---|---|---|---|---|---|
| JAIL N.J. | | | COURT CASE NO. | | |

| IDS NO. | | AGENCY CODE | MUNICIPAL P.D. DEF. ID NO. | MDPO RECORDS AND ID NO. | | |
|---|---|---|---|---|---|---|
| | | 04 | 1204475 | | | DOB (MM/DD/YYYY) |

| DEF | | | | | | | DOB (MM/DD/YYYY) |
|---|---|---|---|---|---|---|---|

| ADDITIONAL CO-DEFENDANT NAME (Last, First, Middle) | | DOB (MM/DD/YYYY) | ☐ IN CUSTODY ☐ FELONY ☐ JUVENILE |
|---|---|---|---|
| 4. | | | ☐ AT LARGE ☐ DV ☐ MISDEMEANOR |
| ADDITIONAL CO-DEFENDANT NAME (Last, First, Middle) | | DOB (MM/DD/YYYY) | ☐ IN CUSTODY ☐ FELONY ☐ JUVENILE |
| 5. | | | ☐ AT LARGE ☐ DV ☐ MISDEMEANOR |

| ADDITIONAL CHARGES | CHARGE AS: | COUNTS | FL STATUTE NUMBER | VIOL OF SECT | CODE OF | UCR | DV | WARRANT TYPE OR TRAFFIC CITATION |
|---|---|---|---|---|---|---|---|---|
| 5. | ☐ F.S. ☐ ORD | | | | | | | ☐AC ☐CAPIAS ☐BW ☐FW ☐PW ☐JUV PU ☐AW ☐DW ☐WRT CASE #: |
| 6. | ☐ F.S. ☐ ORD | | | | | | | ☐AC ☐CAPIAS ☐BW ☐FW ☐PW ☐JUV PU ☐AW ☐DW ☐WRT CASE #: |
| 7. | ☐ F.S. ☐ ORD | | | | | | | ☐AC ☐CAPIAS ☐BW ☐FW ☐PW ☐JUV PU ☐AW ☐DW ☐WRT CASE #: |
| 8. | ☐ F.S. ☐ ORD | | | | | | | ☐AC ☐CAPIAS ☐BW ☐FW ☐PW ☐JUV PU ☐AW ☐DW ☐WRT CASE #: |

and turned towards them taking a combative stance with hands raised, fists clenched and one foot to the rear of another. The officers gave multiple orders for the subject to lay on the ground which he ignored. The officers used their M26 Taser to subdue the subject, the subject continued resisting attempting to get up from the ground. Subject was able to rise to his feet at which time officer Guttierez gave him commands to lay on the ground which he ignored. Officer Guttierez deployed his X26 Taser Subduing the subject for officer Fritz and officer Jordans to handcuff the subject the continued to resist the efforts of officers to handcuff him by tensing his arms and pulling away his arms from the officers. The officers finally forced the subject's hands behind his back and handcuffed him. Subject was arrested and transported to jail while along side Officer Jordans unit during the attempt to handcuff him the subject broke the outside rear view mirror of the police unit.

PAGE 3 OF 3

| HOLD FOR OTHER AGENCY | VERIFIED BY | | ☐ HOLD FOR BOND. DO NOT BOND OUT (Obtain from Judge at Bond Hearing). | I understand that should I willfully fail to appear before the court as required by this notice to appear that I may be held in contempt of court and a warrant for my arrest shall be issued. Furthermore, I agree that notice concerning the time, date, and place of all court hearings should be sent to the above address. I agree that it is my responsibility to notify Clerk of the Court (Juvenile notify Juvenile Division) anytime that my address changes. |
|---|---|---|---|---|
| Name: | | | | |
| I SWEAR THAT THE ABOVE STATEMENT IS TRUE AND CORRECT. | | | SWORN AND SUBSCRIBED BEFORE ME, THE UNDERSIGNED AUTHORITY THIS | ☐ You need not appear in court, but must comply with the instructions on the reverse side hereof. |
| OFFICER'S / COMPLAINANT'S SIGNATURE | COURT ID NUMBER/LOC. CODE | ( ) DAY OF | | |
| NAME (Printed) | Hialeah PD AGENCY NAME | Deputy of the Clerk | | Signature of Defendant / Juvenile and Parent or Guardian |

32.02.09-B   Rev. 04/08

Clerk of Courts
Eleventh Circuit of Florida
Miami Dade County




Home | Online Services | Meet the Clerk | Contact Us | miamidade.gov

## Criminal Justice and Civil Infraction Cases

### COURT CASE:

PEDRO
Closed: 00/00/0000
Warrant Type:
Hearing Date: 10/19/2007                  Hearing Time: 830          Hearing Type: A
Courtroom: REGJB-JUSTICE BUILDING, ROOM#:4-8
Address: 1351 N.W. 12 ST
Next Case:
Previous Case:
Judge: REYES, ISRAEL
Defense Attorney: PUBLIC DEFENDER APPOINTMENT, ASSIGN
Bfile Section: F001                       File Location: FILE ROOM          Box Number: -

| Seq# | Charge | Charge Type | Disposition |
|------|--------|-------------|-------------|
| 1 | BATTERY/POL/FIRE/INT | FELONY | |
| 2 | RESIST OFF W/VIOL | FELONY | |
| 3 | RESIST OFF W/O VIOL | MISDEMEANOR | |
| 4 | CRIM MIS/200-1000 | MISDEMEANOR | |
| 5 | DISORDERLY CONDUCT | MISDEMEANOR | |

New Search            Dockets            Additional Info

printer friendly

# EXHIBIT D



# GONZALO R. DORTA, P.A.

ATTORNEY AT LAW
334 MINORCA AVENUE
CORAL GABLES, FLORIDA 33134



TELEPHONE (305) 441-2220
TELEFAX (305) 441-8849
E-MAIL: GRD@DORTALAW.COM

August 7, 2009

**VIA CERTIFIED RETURN**
**RECEIPT REQUESTED**
**Chief of Police, Mark Overton**
5555 East 8th Avenue
Hialeah, Florida 33013

**Mayor Julio Robaina**
501 Palm Avenue, #A
City of Hialeah City Hall
Hialeah, Florida  33010

**Kathy McIsaac**
Cambridge Integrated Services Group, Inc
501 Palm Ave, 3rd Floor
Hialeah, Florida 33030

**William M. Grodnick, Esquire**
501 Palm Ave
Hialeah, Florida 33010

Re:   **Our Clients/Claimant:**
      **Date of Birth:**
      **Social Security No.:**
      **Date of Incident:** ▓▓▓▓ **September 28, 2007**
      **Hialeah Police Rpt No.:**
      **State Case:**



Dear Gentlemen:

You have been served with the Plaintiff's statutory notice on June 18, 2009.  Please preserve all electronic and written communications, correspondence by and between any City employee or official (former or current) and/or with political subdivisions, law enforcement and/or with  any other person or lawyer relating and/or arising from the incident described in our statutory notice, additional copy is enclose for ease of reference.

Respectfully,

*Gonzalo R. Dorta*

Dictated but not read
To expedite delivery

**Gonzalo R. Dorta**

GRD/ml
Enclosures

2009 AUG 12  A 11: 27

# EXHIBIT E

# GONZALO R. DORTA, P.A.

ATTORNEYS AT LAW
334 MINORCA AVENUE
CORAL GABLES, FLORIDA 33134

TELEPHONE (305) 441-2299
TELEFAX (305) 441-8849
E-MAIL: GRD@DORTALAW.COM

September 2, 2009

**CERTIFIED RETURN RECEIPT**
**Certified No. : 70081300000153214878**
City of Hialeah Police Department
City Clerk's Office
Attention: B. Ricano
501 Palm Avenue
Hialeah, Florida 33010

Re:    **Public Records Request (Ch. 119)**
        **Claimant:**                     **Pedro Santiago Santana**
        **Date of Birth:**
        **Social Security No.:**
        **Subject Incident /Date of Loss:**    **September 28, 2007**
        **Hialeah Police Report Case No.:**
        **State Case:**

## PUBLIC RECORDS REQUEST
## TO CITY OF HIALEAH POLICE DEPARTMENT ("DEPARTMENT")

Dear Records Custodian:

Please be advised that this firm represents Pedro Santiago Santana (Santana).

This constitutes our formal Public Records Request under Chapter 119. As such, we request that you collect, compile, copy and/or make available for our inspection the following public records, so enumerated below, for our inspection and photocopying at a reasonable copying charge, special charge or duplication cost as permitted under §119.07. If you contend that an exemption applies, or so assert same, please specifically state the basis of the exemption(s) that you assert against the specific numbered item per the requirements of §119.07 F.S.

We demand and request to inspect the following public records:

### PUBLIC RECORDS REQUESTED

1.      All Department memorandums, policy manuals, notices, books, handouts and all other writings that memorialize the Department and/or City's policy to follow by police officers on duty in assessing, detecting, evaluating, intervening and dealing

City of Hialeah Police Department
September 2, 2009
Page 2

_____ /

with individuals experiencing mental illness, epileptic attacks, which were in force in the years 2005, 2006, 2007, 2008. ("Years");

2. All course materials and manuals used in the aforesaid Years and in the three (3) prior years for training of recruits and/or used by officers in training in assessing, evaluating, encountering, intervening, evaluating and dealing with persons manifesting epileptic seizures and/or manifesting epileptic conditions.

3. All course materials, department standards and policies on the use of force to effectuate an arrest;

4. All course materials, manuals, department standards and policies on the use of taser guns from the time taser guns were first used by Department thru current year;

5. All close-out memos, internal affairs reports and writings relating to the incident described in the attached Police Report (Exhibit "A");

6. All prior administrative complaints, orders of demotions, writings evidencing reprimand, institution of probationary conditions and/or implementation of supervising controls over the arresting and lead officer(s) involved in the incident described in the attached Police Report (Exhibit "A");

7. All emails relating, discussing the subject incident;

8. The results of all internal or Departmental investigations conducted on the City's police officers that handled the subject incident.

9. For the last 5 years, all administrative complaints, internal investigation reports involving the arresting and investigating police officers named in the attached Police Incident Report.

10. The results of all physical, mental and medical examination performed on Officers-Gutierrez, Badge # 1202, Jordan, Badge # 1598, and Fritz, Badge # 1620, as a condition of their employment and/or as a condition of their pre-employment pursuant to applicable standards governing pre-employment screening, hiring and retention of employees of the City's Police Department and/or the City relating to the hiring and retaining of police officers.

City of Hialeah Police Department
September 2, 2009
Page 3
_____/

        11.     All policies of liability insurance, collective bargaining agreement and all other agreements in effect in 2007, 2008 that insures Hialeah police officers from claims of negligence abuse of force, civil rights and torts.

     You are also put on notice to preserve, in their original form, these requested records, all communication recordings with, by and between all officers involved in the subject incident, and further preserve and not modify, alter, erase or discard any recordings, e-mails, memos, internal, inter and/or intradepartmental memos, e-mails, and written communications relating to the subject incident and/or referring and/or commenting about the police officers involved in the subject incident; investigative reports performed or undertaken as a result of prior incidents of any kind that involves any of the police officers involved in the subject incident, and all other records, personnel or otherwise, involving the police officers involved in the subject incident, including all evidentiary and/or physical evidence collected from the subject incident, whether, tested, studied and/or reviewed, pursuant to investigative activities undertaken on the subject incident.

     Your failure to preserve such records, documents and evidence may expose you and/your Department and City to civil liability.

                                     Respectfully,

                                     Gonzalo R. Dorta

GRD/ml

*Enclosures:*    *Police Report*

# Police Report

001698

**COMPLAINT/ARREST AFFIDAVIT**

| Field | Value |
|---|---|
| OBTS NUMBER | |
| POLICE CASE NO. | |
| SPECIAL OPERATION | ☒FELONY ☐MISD ☐TRAFFIC ☐JUV ☐DV ☐MOVES ☐CIV INF / ☒WARRANT FUGITIVE WARRANT: ☐In state ☐Out of state |
| PBAD | ☐Yes ☒No ☐Unknown |
| COURT CASE NO. | |
| IDS NO. | |
| AGENCY CODE | 04 |
| MUNICIPAL P.D. DEF. ID NO. | 1204475 |
| MDPD RECORDS AND ID NO. | |
| STUDENT ID NO. | |
| GANG ACTIVITY RELATED ARREST ☐ | FRAUD RELATED ARREST ☐ |

DEFENDANT'S NAME (Last, First, Middle)

ALIAS and / or STREET NAME: N/A
SIGNAL: ☐100 ☐150 ☐200 ☐300 ☐400 ☐500

| DOB (MM/DD/YYYY) | AGE 48 | RACE W | SEX M | ETHNICITY: ☐Hispanic ☒Not Hispanic Dominican Rep | HEIGHT 5'9 | WEIGHT 190 | HAIR COLOR Blk | HAIR LENGTH SHRT | HAIR STYLE Oth | EYES Brw | GLASSES ☐Yes ☒No | FACIAL HAIR Mus | TEETH Nor |

PHYSICAL FEATURES (Location, Type, Description)
PLACE OF BIRTH (City, State/Country): Dominican Republic

N/A

| LOCAL ADDRESS (Street, Apt. Number) | (City) | (State) | (Zip) | PHONE | CITIZENSHIP U.S. |
| PERMANENT ADDRESS (Street, Apt. Number) SAME AS Above | ☐HOMELESS ☐UNKNOWN | (City) | (State/Country) | (Zip) | PHONE | OCCUPATION Nurse |
| BUSINESS OR SCHOOL NAME AND ADDRESS (Street) Hialeah Convalescent Home 1900 W. 28 St | (City) Hialeah | (State/Country) FL dade | (Zip) 33012 | PHONE (305) 895-2437 | ADDRESS SOURCE ☐DL ☒Verbal ☐ |

| DRIVER'S LICENSE NUMBER / STATE | SOCIAL SECURITY NO. | WEAPON SEIZED? ☐Yes ☒No | Type | If Del. Has Concealed Weapons Permit PERMIT # NO | INDICATION OF: Y N UNK Alcohol Influence ☐ ☐ ☐ Drug Influence ☐ ☐ ☐ |

| ARREST DATE (MM/DD/YYYY) 09-28-2007 | ARREST TIME (HH:MM) 1635 | ARREST LOCATION (include name of business) 2899 West 2 Ave | | GRID |

| CO-DEFENDANT NAME (Last, First, Middle) 1. | DOB (MM/DD/YYYY) | ☐IN CUSTODY ☐AT LARGE | ☐FELONY ☐DV | ☐JUVENILE ☐MISDEMEANOR |
| CO-DEFENDANT NAME (Last, First, Middle) 2. | DOB (MM/DD/YYYY) | ☐IN CUSTODY ☐AT LARGE | ☐FELONY ☐DV | ☐JUVENILE ☐MISDEMEANOR |
| CO-DEFENDANT NAME (Last, First, Middle) 3. | DOB (MM/DD/YYYY) | ☐IN CUSTODY ☐AT LARGE | ☐FELONY ☐DV | ☐JUVENILE ☐MISDEMEANOR |

| JUV only ☐Parent/s ☐Guardian ☐Foster Care (Name) | (Street, Apt. Number) | (City) | (State/Country) | (Zip) | (Phone) ( ) | Contacted? ☐Yes ☐No |

| CHARGES | CHARGE BY | COUNTS | FL STATUTE NUMBER | VIOL. OF BEST | CODE OF | UCR | DV | WARRANT TYPE OR TRAFFIC CITATION |
|---|---|---|---|---|---|---|---|---|
| 1. Battery on a L.E.O | ☒F.S. ☐ORD | 1 | 784.07 | | | | | ☐AG ☐CAPIAS ☐BW ☐PW ☐PW ☐JUV PU ☐AW ☐DW ☐WRIT   CASE #: |
| 2. Resisting With Violence | ☒F.S. ☐ORD | 1 | 843.01 | | | | | ☐AG ☐CAPIAS ☐BW ☐PW ☐PW ☐JUV PU ☐AW ☐DW ☐WRIT   CASE #: |
| 3. Resisting Without Violence | ☒F.S. ☐ORD | 1 | 843.02 | | | | | ☐AG ☐CAPIAS ☐BW ☐PW ☐PW ☐JUV PU ☐AW ☐DW ☐WRIT   CASE #: |
| 4. Criminal Mischief | ☒F.S. ☐ORD | 1 | 806.13 | | | | | ☐AG ☐CAPIAS ☐BW ☐PW ☐PW ☐JUV PU ☐AW ☐DW ☐WRIT   CASE #: |

The undersigned certifies and swears that he/she has just and reasonable grounds to believe, and does believe that the above named Defendant committed the following violation of law:

On the 28 day of Sept 20 07 at 16:31 (HH:MM) at 2899 West 2 Ave (Location, include name of business) (Narrative, be specific)

Units were dispatched Emergency mode (lights and sirens) reference a male in the roadway. When officers arrived they made contact with ██████████ subject, who was in the roadway obstructing the travel lanes. Officers asked the subject to step out of the roadway and move over to their vehicles. The subject became irrate yelling and screaming at the officers. The subject was told to calm down and comply with the officers orders, subject ignored the officers orders waving his hands and arms in the air. A crowd began to form of customers from

PAGE 1 of 3

| HOLD FOR OTHER AGENCY Name: | VERIFIED BY | ☐HOLD FOR BOND HEARING, DO NOT BOND OUT (Obtain State Attorney or Bond Hearing) | I understand that should I willfully fail to appear before the court as required by this notice to appear that I may be held in contempt of court and a warrant for my arrest shall be issued. Furthermore, I agree that notice concerning the time, date, and place of all court hearings should be sent to the above address. I agree that it is my responsibility to notify Clerk of the Court (Juvenile notify Juvenile Division) anytime that my address changes. |
| I SWEAR THE ABOVE STATEMENT IS TRUE AND CORRECT. | SWORN TO AND SUBSCRIBED BEFORE ME, THE UNDERSIGNED AUTHORITY, THIS | | You need not appear to court, but must comply with the instructions on the reverse side hereof. |
| OFFICER'S / COMPLAINANT'S SIGNATURE | COURT ID NUMBER/LOC. CODE | DAY OF | Signature of Defendant / Juvenile and Parent or Guardian |
| H. MEDINA NAME (Printed) | Hialeah PD AGENCY NAME | Deputy of the Court or Notary Republic | (right thumb print) |

32.02.09-9  Rev. 0508

**COMPLAINT/ARREST AFFIDAVIT CONTINUATION**

| OBTS NUMBER | | | | | COURT CASE NO. | |
|---|---|---|---|---|---|---|
| JAIL I. D. | | | | | | |
| IDS NO. | | AGENCY CODE 04 | MUNICIPAL P.D. DEF. ID NO. 1204475 | | MDPD RECORDS AND ID NO. | |

DEFENDANT'S NAME (LAST, FIRST, MIDDLE) | DOB (MM/DD/YYYY)

ADDITIONAL CO-DEFENDANT NAME (Last, First, Middle)
4. | DOB (MM/DD/YYYY) | ☐ IN CUSTODY ☐ FELONY ☐ JUVENILE  ☐ AT LARGE ☐ DV ☐ MISDEMEANOR

ADDITIONAL CO-DEFENDANT NAME (Last, First, Middle)
5. | DOB (MM/DD/YYYY) | ☐ IN CUSTODY ☐ FELONY ☐ JUVENILE  ☐ AT LARGE ☐ DV ☐ MISDEMEANOR

| ADDITIONAL CHARGES | CHARGE AS | COUNTS | FL STATUTE NUMBER | VIOL. OF SECT | CODE OF | UCR | DV | WARRANT TYPE OR TRAFFIC CITATION |
|---|---|---|---|---|---|---|---|---|
| 5. Disorderly Conduct | ☒ F.S. ☐ ORD | 1 | 877.03 | | | | | |
| 6. | ☐ F.S. ☐ ORD | | | | | | | |
| 7. | ☐ F.S. ☐ ORD | | | | | | | |
| 8. | ☐ F.S. ☐ ORD | | | | | | | |

near by buisnesses. The officers continued to order the subject to calm down and stop yelling. When the officers attempted to take the subject into custody he began tensing his arms preventing officers from handcuffing him. The officers ordered the subject to stop resisting which he ignored and began to physically resist the officers. The subject turned towards officer Jordens pulling his arm out of officer Jordens's grip while officer Jordens was attempting to handcuff him. The subject then pushed officer Jordens knocking him to the ground. While on the ground the subject stepped toward officer Jordens raising his arms to strike officer Jordens. Officer Fritz came to the aid of officer Jordens striking the subject and knocking him to the ground. Both officers then got on top of the subject to handcuff him. The subject began swinging his arms in an attempt to strike the officers in the head and body. The subject struck officer Jordens in the right arm. Subject then got up from the ground and began to flee. Both officer's gave orders to stop which the subject ignored and continued running. When officers pursued the subject closing the distance the subject stopped PAGE 2 of 3

HOLD FOR OTHER AGENCY | VERIFIED BY
Name:

I SWEAR THAT THE ABOVE STATEMENT IS TRUE AND CORRECT.

OFFICER'S / COMPLAINANT'S SIGNATURE | COURT ID NUMBER/LOC. CODE

NAME (Printed)   Nichek PD
AGENCY NAME

SWORN TO AND SUBSCRIBED BEFORE ME,
THE UNDERSIGNED AUTHORITY THIS ___ 28
DAY OF ___
Deputy of the Court / ___

32.02.05-9  Rev. 05/06

**COMPLAINT/ARREST AFFIDAVIT CONTINUATION**

| OBTS NUMBER | | | |
|---|---|---|---|
| JAIL NO. | | COURT CASE NO. | |
| IDS NO. | AGENCY CODE 04 | MUNICIPAL P.D. DEF. ID NO. 1204475 | MDPD RECORDS AND ID NO. |

DEFENDANT'S NAME (LAST, FIRST, MIDDLE)

ADDITIONAL CO-DEFENDANT NAME (Last, First, Middle)
4.

ADDITIONAL CO-DEFENDANT NAME (Last, First, Middle)
5.

| ADDITIONAL CHARGES | CHARGE AS: | COUNTS | FL STATUTE NUMBER | VIOL. OF SECT | CODE OF | UCR | OV | WARRANT TYPE OR TRAFFIC CITATION |
|---|---|---|---|---|---|---|---|---|
| 5. | F.S. ORD | | | | | | | |
| 6. | F.S. ORD | | | | | | | |
| 7. | F.S. ORD | | | | | | | |
| 8. | F.S. ORD | | | | | | | |

and turned towards them taking a combative stance with hands raised, fists clenched and one foot to the rear of another. The officers gave multiple orders for the subject to lay on the ground which he ignored. The officers used their M26 Taser to subdue the subject, the subject continued resisting attempting to get up from the ground. Subject was able to rise to his feet at which time officer Guttierez gave him commands to lay on the ground which he ignored. Officer Guttierez [100] deployed his X26 Taser subduing the subject for officer Fritz and officer Jordens to handcuff the subject the continued to resist the efforts of officers to handcuff him by tensing his arms and pulling away his arms from the officers. The officers finally forced the subject's hands behind his back and handcuffed him. Subject was arrested and transported to jail. While along side Officer Jordan's unit during the attempt to handcuff him the subject broke the outside rear view mirror of the police unit.

PAGE 3 OF 3

| HOLD FOR OTHER AGENCY | VERIFIED BY |
|---|---|
| Name: | |

I SWEAR THAT THE ABOVE STATEMENT IS TRUE AND CORRECT.

| OFFICER'S / COMPLAINANT'S SIGNATURE | COURT ID NUMBER/LOC. CODE |
|---|---|
| | Hisleh 90 |
| NAME (Printed) | AGENCY NAME |

32.02.09-9   Rev. 06/08




Clerk of Courts
Eleventh Circuit of Florida
Miami Dade County

Home | Online Services | Meet the Clerk | Contact Us | miamidade.gov

## Criminal Justice and Civil Infraction Cases

### COURT CASE:

| | |
|---|---|
| **State Case#:** ██████████K | **Name:** ████████ |
| **Date Filed:** 08/30/2007 | **Date Closed:** 00/00/0000 |
| **Hearing Date:** 10/19/2007 | **Hearing Time:** 830 |

**DOB:** ██████
**Warrant Type:**
**Hearing Type:** A

**Courtroom:** REGJB-JUSTICE BUILDING, ROOM#:4-8
**Address:** 1351 N.W. 12 ST
**Next Case:**
**Previous Case:**
**Judge:** REYES, ISRAEL
**Defense Attorney:** PUBLIC DEFENDER APPOINTMENT, ASSIGN
**Bfile Section:** F001

**File Location:** FILE ROOM

**Box Number:** -

| Seq# | Charge | Charge Type | Disposition |
|---|---|---|---|
| 1 | BATTERY/POL/FIRE/INT | FELONY | |
| 2 | RESIST OFF W/VIOL | FELONY | |
| 3 | RESIST OFF W/O VIOL | MISDEMEANOR | |
| 4 | CRIM MIS/200-1000 | MISDEMEANOR | |
| 5 | DISORDERLY CONDUCT | MISDEMEANOR | |

New Search                     Dockets                    Additional Info

printer friendly

Home | Online Services | Meet the Clerk | Contact-Us | Miami-Dade County | Privacy Policy | Disclaimer | Troubleshooting
Email | FAQ | CJIS Home

# EXHIBIT F

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL   CIRCUIT   IN   AND   FOR
MIAMI- DADE COUNTY, FLORIDA

GENERAL JURISDICTION

PEDRO SANTIAGO,                                CASE NO.  10 - 24746 CA 08

     PLAINTIFF,

vs.

CITY OF HIALEAH, a Political
Subdivision of the State of Florida,

     Defendant.

_____/

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION
## TO DEFENDANT, CITY OF HIALEAH

    **COMES NOW,** the Plaintiff, PEDRO SANTIAGO, by and through his undersigned

attorney, pursuant to Rule 1.350, Florida Rules of Civil Procedure, hereby requests that

Defendant, CITY OF HIALEAH, (hereinafter "CITY"), produce the following documents to

inspect and/or produce copies of the documents described below, within forty-five (45) days

after service, hereof, at the Law Office of Gonzalo R. Dorta, P.A., 334 Minorca Avenue, Miami,

Florida 33134.

### DOCUMENTS REQUESTED

    1.    Produce the personnel file of each individual officer that responded to the incident

involving the Plaintiff on September 28, 2007 at 2899 West 2nd Avenue, Hialeah, FL (hereinafter

"Incident").

    2.    Produce all records generated by the City of Hialeah Police Department in

connection with the incident.

3.     Produce all police department manuals, protocols, training manuals, videos, inter-office memorandums and/or intra-office memorandums, bulletins relating, pertaining, and/or training its police officers on the proper use of taser guns.

4.     Produce all training records, including recommendation certificates, disciplinary action records, records of demotion, records of promotion, department and/or training evaluations on each of the officers involved in the Incident.

5.     Produce a copy of the results of all pre-employment medical and/or mental examinations performed on each of the officers involved in the Incident.

6.     Produce a copy of all reports arising from any internal investigation of the police officers behavior, conduct and/or work in connection with the Incident.

7.     Produce all department manuals, bulletins, books, procedures, memorandums, textbooks, videos, CDs, and all other written materials ever used by the City's Police Department to train, educate its police force on how to detect and/or react to suspect's suffering from a medical condition, epilepsy, epileptic seizure and/or manifesting neurological, physical and/or mental manifestation of an illness, impairment, health condition and/or physical ailment which hinders and/or prevents the suspect from coherently and responsibly adhering to commands and/or directives from the responding and/or arresting officers.

8.     All training manuals, written materials, department protocols and/or procedures on how responding police officers are to approach, treat, react and handle a suspect manifesting a seizure, convulsions and/or cardiac arrest or other medical conditions, resulting in uncontrollable body movements.

2

9.    All forms that the responding police officers involved in this Incident filled out and/or signed as a result of their use of a taser gun and/or use of deadly force if such force were signed and/or filled out or otherwise required by the police department in light of the use of a taser gun.

10.    All manufacturer specification, manuals, written materials describing the type, model of taser guns used on the Plaintiff including all maintenance records and/or maintenance schedules and/or repair records for each taser gun used in the subject Incident.

11.    All manufacturer and/or distributor provided and/or produced materials on the safe use, maintenance and operation of the subject taser guns employed at the scene of the Incident.

12.    All recordings of the complaints, communications, telephonic call to headquarters and/or to the dispatcher from any customer, citizen and/or merchant resulting in the subject officers being dispatched to the scene of the Incident.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed this 23rd day of April, 2010 and served together with the Complaint.

GONZALO R. DORTA, P.A.
334 Minorca Avenue
Coral Gables, Florida 33134
Telephone: 305-441-2299
Telecopier: 305-428-2821

By: _____
GONZALO R. DORTA
Florida Bar No. 650269

3